CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.*

MURRAY.

Opinion delivered April 6, 1908.

1.  MASTER AND SERVANT—NEGLIGENCE AS TO APPLIANCES.—In an action by a brakeman to recover for personal injuries received in a fall from a flat car caused by a standard by which he was supporting himself pulling out of its socket, a verdict in favor of the plaintiff will be set aside if the evidence showed that the standard used was sufficient for the purpose for which it was used, namely, to keep material on the car from falling off, and failed to show that the purpose of the standard was to furnish a handhold for the use of brakemen. (Page 603.)

2.  SAME—USAGE—NOTICE.—Testimony of plaintiff that brakemen usually gave signals by swinging out from the side of flat cars while holding on to the standards is insufficient to prove that this was the proper method of doing so, or that the usage was so continuous and notorious that the railway company must have known and sanctioned it.  (Page 604.)

3.  SAME—ASSUMED RISK—CONTRIBUTORY NEGLIGENCE.—Where a brakeman, in making a signal, supported himself by a standard bar of the flat car in which he was riding, knowing that it did not fit in its socket and was therefore insecure, he will be held both to have assumed the risk therefrom, and to be negligent in putting himself in a place of danger, and can not recover. (Page 604.)

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; reversed.

### STATEMENT BY THE COURT.

The appellee was a "switchman and brakeman" in the employ of appellant.  It was his duty, under the direction of a foreman, to turn switches, cut off cars, and to look after the placing of cars.  In approaching a "bunch of cars," it was appellee's duty to give a slow signal.  On the night he received his injuries appellee was riding on a train consisting of an engine and nineteen or twenty cars.  The engine was backing the cars down to be placed in certain designated positions.  Appellee was riding on the front car, or the car most remote from the engine in the direction the train was backing.  It was a flat car loaded with steel.  The usual standard on such cars was a piece of wood six by six, cut down to four and one-half inches so as to fit in the socket on the side.  The car on which appellee was riding was not provided with such standards, but had instead, on the side where appellee was riding, what is termed "angle bars."  These were two bars of iron bolted together, and put in the socket for a standard.  The angle bar did not fit in the socket closely.  On the night appellee received his injuries, they were approaching some other cars standing down the track, and appellee gave the engineer a "slow signal."  He describes the manner in which he gave the signal as follows: "I had hold of an angle bar stuck in a socket with one hand and a grab iron with the other hand, and I had one foot on the step and the other on the oil box, because the grab iron was so close to the

step that it was impossible for a man to put his foot there, or both of them there, and hold to the grab iron. I turned loose with my right hand that I had hold of the grab iron when I gave that slow signal, and the angle bar turned and threw me off." Appellee had his toes crushed, and was otherwise injured. He sued the appellant, alleging in his complaint "that the appellant was negligent in furnishing a defective standard; that said standard was defective in that it was loose in its socket, and that it was not the usual and ordinary standard used on the ordinary flat car, the same being a fish plate, or piece of iron; that at the time of boarding said train appellee did not know the condition and character of said standard; that while holding to said standard it slipped in its socket and caused appellee to be thrown under said car, resulting in an injury to appellee's foot, etc."

The appellant answered denying that appellee was injured through any negligence on its part, and setting up that his injuries were caused by appellee's own negligence.

After the evidence was in appellant asked the court to instruct the jury to return a verdict in its favor, which the court refused. The verdict and judgment were in favor of appellee. Motion for new trial was overruled, and this appeal prosecuted. Other facts stated in opinion.

*Buzbee & Hicks,* for appellant.

Appellee is not entitled to recover because (1) there was no testimony that the use of the angle bar for the purpose for which it was provided was negligent. 80 Ark. 68. (2) The injury would not have occurred but for appellee's own negligence contributing thereto. (3) If there was any risk in the use of the angle bar, as shown by the testimony, it was obvious and patent to appellee, and he assumed the risk, and the court should have taken the case from the jury. 53 Ark. 129; 56 Ark. 237; 66 Ark. 239.

*Westbrook & Brouse,* for appellee.

WOOD, J., (after stating the facts.) Appellant contends that the court erred in refusing to instruct the jury to return a verdict in its favor for the following among other reasons, to-wit:

"1. That the plaintiff has failed to show any negligence on part of the company as alleged in the complaint and denied in the answer.

"2. His injuries were the result of his own contributory negligence.

"3. Having full knowledge of the condition of the device, he assumed the risk of using it, as the proof shows he used it."

The only negligence alleged is that appellant furnished a defective standard, one that was loose in its socket, and that slipped when appellee seized it in the act of giving the slow signal.

Appellee stated that "on a car loaded with railroad irons it was always necessary to have standards; that standards were necessary, no difference what the car is loaded with." He says that the purpose of the standards "was the protection of the material on the car, and for the protection of the employees of the company to keep things from falling off when the cars are being switched." The purpose of the standards being to keep the material on the flat cars from falling off when the flat cars were being switched, appellant was not negligent in the matter of furnishing standards, so long as the standards it provided served the purpose for which they were intended. There is no evidence in the record that the standards which were being used at the time appellee received his injury were insufficient for the purpose of keeping things from falling off the cars, when they were being switched. The burden was upon the appellee to prove the negligence charged in its complaint, to-wit, "in furnishing a defective standard." In the absence of evidence showing that the standards were insufficient or defective in serving the purpose for which they were constructed and to be used, appellee fails to sustain his allegation of negligence. If appellee had shown that the purpose of standards on flat cars was to furnish handholds for the brakemen when they were giving slow signals, the case would have been different. In that case appellant would have been negligent if it failed to exercise ordinary care to furnish standards that provided safe and secure handholds if it became necessary for the brakemen to swing out from the side of the car in order to

give the proper signals. But there is no such proof in the record.

Appellee was asked this question: "In performing the service that you were performing there, is it necessary for a brakeman to hold a standard, in order to perform the service?" He answered: "It is in a case of that kind; he could not do it otherwise." This testimony of appellee can only mean that in a case where a brakeman was giving a slow signal by swinging out from the side of the car, as appellee was attempting to do in this case, it was necessary for him to hold on to the standard. But this evidence falls far short of proving that the proper way of giving the slow signal was to swing out from the car and to hold on to the standard in doing so. True, appellee gave the slow signal in this way, and testified that all the brakemen he ever worked with did the same thing. But this did not establish that it was a proper method, or that it was so continuous and notorious that the company must have known it and sanctioned it. In the absence of proof from which such knowledge and acquiescence on the part of the company could be inferred, it would not be liable for failing to exercise ordinary care to furnish appliances that would make the methods adopted by its employees, without its knowledge and acquiescence, safe. See *St. Louis, I. M. & Sou. Ry. Co.* v. *Carraway,* 77 Ark. 405.

There is no evidence to warrant the jury in finding that appellant was negligent in that it furnished defective standards. The judgment has no evidence to support it, and the court should have directed a verdict in appellant's favor.

Even were it conceded that appellant was negligent in furnishing "angle bars" for standards, the appellee knew, when he took hold of the angle bar, that it was not the usual standard, he knew how it was placed in the socket, knew that it did not fit the socket, and when he, under these circumstances, released the grab iron with his right hand, depending upon the insecure angle bar for support, he assumed the risk of the danger incident to this method of giving the signal. Appellee had been in the service for some time, and had seen these angle bars used as standards before. The defect was perfectly obvious to him, and his own negligence in putting himself in the danger-

ous position described by him contributed to the injury he received, and precludes his recovery therefor.

Reversed and remanded for new trial.