CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* GRUBBS.

## Opinion delivered February 6, 1911.

1. APPEAL AND ERROR—EVIDENCE—REVIEW.—In determining whether there was evidence legally sufficient to sustain a verdict, the court on appeal will consider the testimony in its aspect most favorable to the appellee. (Page 487.)

2. MASTER AND SERVANT—ASSUMED RISK.—By accepting and continuing in employment a servant assumes the ordinary and usual risks and perils that are incident thereto. (Page 488.)

3. SAME—DUTY TO INSTRUCT SERVANT.—The master is not required to point out to the servant dangers which are readily ascertainable by the servant himself if he makes an ordinarily careful use of such knowledge, experience and judgment as he possesses. (Page 489.)

4. SAME—ASSUMED RISKS.—Where a servant, having intelligence to appreciate the dangers to which he will be exposed, knowingly assents to occupy a place set apart for him by the master, he assumes the risk therefrom, and cannot hold the master liable for failure to furnish him a safe place in which to work. (Page 490.)

5. SAME—INJURY TO SERVANT—ASSUMED RISK.—Where a servant employed to straighten creosoted ties knew that the ties were liable to slip, and yet climbed on the drawhead of the car and took hold of a tie, which slipped and caused him to fall and receive injuries, he assumed the risk. (Page 490.)

6. SAME—ASSUMED RISK.—Where the place or the work itself was unsafe, a servant voluntarily engaging therein with knowledge of the risk will be held to have assumed the same. (Page 490.)

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; reversed.

*Thomas S. Buzbee* and *John T. Hicks,* for appellant.

Negligence in respect to loading the ties might be conceded, yet that would avail appellee nothing, since the loading of the ties was not the proximate cause of the accident. After they became disarranged *en route,* it was appellant's duty to have them placed in proper order. This was one of the purposes for which appellee was employed. In one sense it was his duty to make the place safe, and appellant could only have it made safe through the instrumentality of appellee or some other workman, and he assumed the hazards of his employment. 76 Ark. 69; 82 Ark. 534; 85 Ark. 600; 89 Ark. 50; 90 Ark. 387. See also 84 Fed. 84; 34 S. W. 362.

*Carmichael, Brooks & Powers,* for appellee.

The question of negligence is a mixed one of law and fact, in the determination of which are to be considered whether an act has been done or omitted and whether the doing or omission was a breach of legal duty. 35 Ark. 602. Appellant's request for a peremptory instruction was therefore properly refused. On the question of fact, the jury having been properly instructed, their verdict will not be disturbed, even if it should appear that it is against the preponderance of the evidence. On the contrary, in testing the sufficiency of the evidence, the court will give to the testimony its strongest probative force in favor of the verdict. 48 Ark. 494; 67 Ark. 399; 74 Ark. 478; 76 Ark. 115; 73 Ark. 377; 76 Ark. 326; 70 Ark. 512; 64 Ark. 238.

FRAUENTHAL, J. This was an action instituted by C. W. Grubbs, the plaintiff below, to recover damages for a personal injury which he sustained while in defendant's employment, and which he alleged was caused by defendant's negligence. The defendant denied the allegations of negligence set out in the complaint, and pleaded as a bar to a recovery by plaintiff his alleged contributory negligence and his assumption of the risk of the injury. The jury returned a verdict in favor of the plaintiff, and from the judgment rendered thereon the defendant has appealed to this court.

Upon the trial of the case the defendant asked for a peremptory instruction in its favor; and now contends that under the uncontroverted testimony in the case the injury which the plaintiff received was due to a risk which was ordinarily incident to the employment in which he was engaged, and which, therefore he assumed; and also that plaintiff himself was guilty of negligence which contributed to cause the injury. In determining whether or not there was any evidence adduced upon the trial of the case that was legally sufficient to warrant the verdict, this court will consider the testimony in its aspect most favorable to plaintiff and make every legitimate inference in his favor that is deducible therefrom. Viewed in this manner, the case is substantially this: The plaintiff was employed by the defendant as a section hand, and had been engaged in that service for about 18 months prior to the time he received the injury complained of. Two cars of creosoted ties had been

placed upon the side track at the town of Lonoke. These ties were loaded on flat cars, and had become disarranged while being transported. They were placed upon the side track for the purpose of having them rearranged or straightened out, and it was one of the duties of the section hands to do this. The foreman of the section crew directed a number of his hands, amongst whom was plaintiff, to straighten out these ties upon the cars. The ties were loaded upon the cars to a height of about 12 or 14 feet from the ground, and they had become so disarranged that their ends protruded over the cars. The men first attempted to rearrange the ties by the use of a scantling while standing on the ground; but, this method proving unsuccessful, the foreman directed the men to go upon the ties in order to straighten them out. Four of the men got upon the ties safely. The plaintiff went to the end of the flat car and, climbing upon the drawhead of the car, caught hold of a protruding cross tie with his hand and attempted to pull himself up. The tie slipped, and the plaintiff, loosening his hold, fell to the ground, and was painfully and severely injured. The plaintiff had worked with ties which had been treated with creosote and knew that they were made slick by reason of this treatment; and the section crew to which he belonged had handled a great number of creosoted ties prior to the time of this injury and had straightened the ties on probably one or two cars.

The foreman did not direct the section hands, and did not direct the plaintiff, as to the manner in which they should get upon the ties, nor did he warn them of any danger in so doing. He left the manner of mounting the cars to their own discretion, and did not see or know of plaintiff's attempt to get on the car until after the injury.

In accepting and continuing in the employment in which he is engaged a servant assumes the ordinary and usual risks and perils that are incident thereto. He assumes all the obvious risks of the work in which he is engaged and also the risks which he knows to exist as well as those which by the exercise of reasonable care he may know to exist. By the contract of service he agrees to bear the risk of all such dangers, and he therefore cannot recover for the injuries resulting therefrom. As is said in the case of *Fordyce* v. *Stafford,* 57 Ark. 503: "The

employee assumes all risks naturally and reasonably incident to the service in which he engages, where the hazards of the service are obvious and within the apprehension of a person of his experience and understanding." *St. Louis, I. M. & S. Ry. Co. v. Touhey,* 67 Ark. 209; *Archer-Foster Construction Co. v. Vaughn,* 79 Ark. 20; *Choctaw, O. & G. Ry. Co. v. Thompson,* 82 Ark. 11; *Graham v. Thrall,* 95 Ark. 560; 1 Labatt on Master & Servant, § 259.

In the case at bar the plaintiff knew that the effect of the treatment of creosote upon cross ties was to make them slick and therefore liable to slip. The ties had on this account become disarranged upon the cars, and it was for this reason that plaintiff was directed to do the work of straightening them out. Their condition was patent to him, and the manner in which they were disarranged upon the car was also patent. It was obvious, therefore, that these ties were liable to slip whenever any force or weight was applied to them. The risk of injury which might result by reason of the ties slipping or moving was obvious, and when plaintiff undertook the service of straightening them out he assumed that risk. The plaintiff knew that these ties had been treated with creosote, and he testified that the effect of such treatment made them slick; he observed that on account of this slick condition these ties had become dislodged and disarranged, and therefore the danger incident to applying force to them and thereby causing them to easily move was obvious and known to the plaintiff. A master is not bound to warn the servant as to dangers which are obvious and patent to him. And where the master and servant are possessed of equal knowledge of the danger, then it is not incumbent upon the master to warn a servant of sufficient maturity and experience to appreciate the same. In such case the servant assumes the risk. In the case of *Louisiana & A. Ry. Co. v. Miles,* 82 Ark. 534, the court, quoting from Labatt on Master & Servant, states the doctrine as follows: "The master is not required to point out the dangers which are readily ascertainable by the servant himself if he makes an ordinary careful use of such knowledge, experience and judgment as he possesses. The failure to give instructions, therefore, is not culpable where the servant might by the exercise of ordinary care and attention have

known of the danger, or, as the rule is also expressed, where he had all the means necessary for ascertaining the conditions and there was no danger which could not be discovered."

But it is urged by counsel for plaintiff that while the servant assumes the ordinary risks incident to the employment he does not assume the risk of danger caused by the negligence of the master. It is contended that it is incumbent upon the master to furnish the servant with a safe place in which to do the work, and in failing to perform that duty the master is guilty of negligence. It is claimed in this case that it was the duty of the defendant to have provided the plaintiff with a safe means of mounting the car in order to rearrange the ties, and that it failed to furnish same. But, even if the failure to furnish such special appliance or means of mounting the car should be considered an act of negligence on the part of the defendant, still the plaintiff was fully aware of the manner in which the work was being done and the way in which the car was mounted. In the case of *Emma Cotton Seed Oil Co.* v. *Hale,* 56 Ark. 232, it is said: "If, having sufficient intelligence and knowledge to enable him to see and appreciate the dangers to which he will be exposed, he knowingly assents to occupy a place set apart for him by the master, and he does so, he thereby assumes the risks incident thereto and dispenses with the obligation of the master to furnish him a better place. It is then no longer a question of whether such place could not with reasonable care and diligence be made safe. Having voluntarily accepted the place occupied by him, he cannot hold the master liable for injuries received by him because the place was not safe." Where the servant knows the methods that are adopted in doing the work and the place furnished in which the work is done, and accepts or continues in the employment under such conditions, he assumes the risks of the dangers which may result therefrom. *Railway Co.* v. *Kelton,* 55 Ark. 483; *Patterson Coal Co.* v. *Poe,* 81 Ark. 343; *Graham* v. *Thrall, supra.*

But, in addition to this, in the case at bar the plaintiff was engaged in the work of straightening out the ties which on account of their peculiar slick condition had become disarranged. If the place or the work itself was unsafe, it was

a part of the very service which the plaintiff voluntarily engaged in with full knowledge of the unsafety of the place and the dangers of the work. The rule is that under such circumstances the servant assumes the risks of the dangers incident to such duty he has thus engaged to perform. In speaking of the risk which in such a case is assumed by the servant this court, in the case of *Marshall* v. *St. Louis, I. M. & S. Ry. Co.,* 78 Ark. 213, quoted the following with approval from Judge Lurton: "It is not a case where dangerous or defective instrumentalities are supplied by the master to be used in his work, and where notice of such danger should be given, but a case where the instrumentalities to be handled and worked with or upon are understood to involve peril and to demand unusual care. In such cases the risk is assumed by the servant as within the terms of his contract and compensated by his wages."

In the case at bar the plaintiff was engaged in rearranging the ties, which he knew had become dislodged and displaced on account of their slick condition. He understood the manner in which the work was to be done; and whatever danger was incident to mounting the car and going on and over these ties was obvious to any one with the experience and understanding possessed by plaintiff. The danger of these ties slipping and the peril arising therefrom was one of the ordinary incidents of the work in which he was engaged. This risk of injury therefrom was therefore assumed by him. *Grayson-McLeod Lumber Co.* v. *Carter,* 76 Ark. 69; *Chicago, R. I. & Pac. Ry. Co.* v. *Murray,* 85 Ark. 600; *St. Louis, I. M. & S. Ry. Co.* v. *Goins,* 90 Ark. 387.

Considering the testimony adduced upon the trial of this case most favorably to the cause of the plaintiff, we are of opinion that the injury which he sustained occurred by reason of a risk which under the law he assumed.

The judgment must accordingly be reversed, and the case dismissed. It is so ordered.