St. Louis, Iron Mountain & Southern Railway Company v. Vann.

Opinion delivered March 6, 1911.

1. Master and servant—assumed risk.—The negligence of the master or of a fellow servant (under the statute making the master responsible for the negligent act of a fellow servant) in failing to furnish a safe place to work, where the servant is unaware of the negligence, will not be held to have been assumed by such servant. (Page 148.)

2. Same—negligence—evidence.—In an action by a locomotive fireman to recover damages for personal injuries caused by a large lump of coal rolling down from the tender on his foot, it was competent to prove the contract between the railway company and its firemen as to the size of the coal, upon the issue whether the tender was improperly loaded, and whether plaintiff was negligent in getting too near the coal pile. (Page 150.)

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; affirmed.

*W. E. Hemingway, E. B. Kinsworthy, Bridges, Wooldridge & Gantt,* and *James H. Stevenson,* for appellant.

Appellee assumed the risk of the danger. 89 Ark. 50; 82 Ark: 11; 161 Mass. 153; 93 Ark. 140; 56 Ark. 232; 23 Ark. L. R. 42; *Id.* 442; *Id.* 628. The injury was the result of an unavoidable accident for which the defendant is not liable. 86 Ark. 289; 94 U. S. 469; 105 U. S. 249; 69 Ark. 402; 55 Ark. 163; 120 S. W. 984; 62 Kan. 727; 64 Pac. 605; 54 L. R. A. 402; 95 Pa. St. 287; 40 Am. R. 649; 124 Fed. 113; 63 L. R. A. 416; 108 Va. 822; 62 S. E. 972; 85 N. E. 728; 109 Ill. App. 533; 67 Wis. 616; 31 N. W. 321; 58 Am. R. 881; 24 Am. & Eng. Ry. Cas. 404. The evidence fails to show negligence on the part of the defendant. 87 Ark. 52; 93 Ark. 140. The court erred in permitting plaintiff to testify as to the contract between the company and the fire-

men's organization regarding the breaking of coal before placing it on the tender. 2 Ark. 512; 7 Ark. 470; 5 Ark. 66; 39 Ark. 340; 57 Ark. 512; *Id.* 595; 6 Ark. 112; 65 Ark. 422; 67 Ark. 426; 91 Ark. 292; 70 Ark. 232.

*Trimble, Robinson & Trimble* and *Robertson & DeMers,* for appellee.

The question of assumption of risk is one for the jury. 77 Ark. 367; 88 Ark. 549; 79 Ark. 53; 87 Ark. 396; 205 U. S. 1. The evidence does not show that plaintiff's injury was the result of an accident for which the defendant is not liable. 8 Wend. 473; 50 Ga. 509; 61 Fed. 490; 86 Ky. 565; 53 Pa. St. 436; 97 S. W. 910; 206 Ill. 145; 94 U. S. 469; 54 Ark. 209; 57 Ark. 429; 18 L. R. A. (N. S.), 1185; 20 L. R. A. 698; 120 Wis. 254; 78 N. Y. App. Div. 163; 78 N. Y. S. 919; 32 N. Y. S. 59. The evidence is sufficient to sustain the jury's finding of negligence. 23 Ark. 115; 50 Ark. 477; 76 Ark. 88; *Id.* 538; 77 Ark. 458; *Id.* 367; 87 Ark. 443; 89 Ark. 424; *Id.* 522; 90 Ark. 223; *Id.* 555; 91 Ark. 343; *Id.* 388; 92 Ark. 102; 93 Ark. 564; 96 Ark. 32; 21 L. R. A. (N. S.) 138; 37 La. Ann. 650. There was no prejudicial error in permitting plaintiff to testify as to the rule requiring the company to load the tender with coal of furnace size. 74 Ark. 417; 73 Ark. 407; 76 Ark. 276; 45 Ark. 539; 55 Ark. 163; 58 Ark. 125; *Id.* 374; *Id.* 446; 65 Ark. 422; 91 Ark. 292. The employer must furnish a safe place to work. 87 Ark. 443; 82 Ark. 11; 87 Neb. 217. A servant does not assume the risk of danger from the master's negligence. 93 Ark. 564; 92 Ark. 102; 90 Ark. 223; 89 Ark. 424; 88 Ark. 243; 70 Ark. 295; 48 Ark. 333; 77 Ark. 367.

McCULLOCH, C. J. The plaintiff sues his former employer, the St. Louis, Iron Mountain & Southern Railway Company, to recover damages on account of personal injuries received while in the latter's service. He was a locomotive fireman, and was called at Argenta, Ark., to go out on an extra west-bound engine on the night of February 27, 1908. In response to the summons of the caller, he went over to the yard about 10:30 o'clock P. M. and got on the engine, which was then in charge of a hostler. While he was getting ready to begin his work, the hostler started to back the engine up to the train station, the engineer in the

meantime having come on the engine. As soon as the train station was reached, the hostler left the engine in charge of the engineer and fireman, and the engineer at once got off to examine the engine and to oil it up. Plaintiff, in order to get ready for his work, proceeded to change his clothes. There were no lights in the engine at that time. When he finished putting on his train clothes, he got a lamp or oil torch and stepped down on the deck, in front of the coal gate of the tender, for the purpose of filling his lamp preparatory to lighting it, and while in the act of doing this a large lump of coal, weighing from thirty to fifty pounds, suddenly rolled down from the tender on the deck and struck his foot, inflicting serious injury. A disease of the bone subsequently developed, and after treatment for nearly a year, it became necessary to amputate the foot and a portion of the leg.

It is alleged in the complaint that the defendant and its servants were negligent in "improperly loading and overloading the tender of plaintiff's engine, and thereby rendering the plaintiff's place of work unsafe, resulting in injury as heretofore stated." The answer contained denials of each and every allegation of the complaint, it being the contention of the defendant in the first place that the plaintiff received no injuries at all; and that its servants were not guilty of any negligent act which caused any injury. Contributory negligence and assumption of risk were also pleaded.

The evidence adduced by plaintiff tended to show that it was the duty of other employees of the company to prepare the engine for the trip by filling the tender with coal; that, according to the contract between the company and its firemen, it was the duty of the company to have all coal broken ready for use in the furnace before being placed upon the tender, it being understood that the lumps were to be not larger than a man's double fist; that the tender was not filled with coal under the supervision of the fireman, but was ready when the fireman was called. A short time before this an improved coal chute was installed, and the method of filling the tender with coal was to run the engine to the chute and drop an apron, which guided the coal into the tender, so that when the door or barrier was raised the pressure of the coal forced it down until the tender was filled.

It was the duty of the fireman, before starting on a trip, to

see that his engine had been properly supplied with coal. The defendant adduced testimony tending to show that plaintiff received no injury at the time or in the manner of which he complains. The jury returned a verdict in favor of the plaintiff, and the defendant has appealed.

It is insisted that the verdict is not sustained by the evidence, in that there is no proof of negligence on the part of defendant's servants, and that according to the undisputed facts the plaintiff must be deemed to have assumed the risk of the danger. We think the evidence was sufficient to warrant a finding of negligence on the part of the hostler and herders, as they are called, whose duty it was to take the engine to the coal chute and load it with coal. There was evidence to the effect that it was too heavily loaded, and also that it was improperly loaded by having lumps larger than called for in the contract with the fireman.

There is a sharp conflict in the testimony as to whether the tender was overloaded. Some of the witnesses introduced by defendant testified, not only that it was not overloaded, but that it was impossible to overload the tender, one of them stating that it was like filling a vessel with water—when it is full, the surplus will run over. We think this presented a question for the determination of the jury as to whether the tender was overloaded. The comparison made by the witness of coal with water is not an apt one, for while water will overflow a vessel, a hard substance like coal can be piled up.

Attention is called in plaintiff's testimony to the fact that the lump of coal rolled down while the engine was standing perfectly still, and this fact is urged as a reason why plaintiff's version of the matter should not be accepted. Conceding that it is unusual for a lump of coal to roll down from a pile that is perfectly still at the time, yet we are not prepared to say that this is impossible, so as to demand a rejection of the statement. Where the coal had been loosely dumped down into the tender and piled high, perhaps forming an apex, it is not unreasonable to suppose that there would be some settling for a little while, and that a large lump at or near the top might be so delicately poised that the slightest jar or vibration would cause it to roll down.

Nor do we think that it can be said as a matter of undisputed fact that plaintiff assumed the risk. It is true that it was his

duty to inspect the pile of coal to ascertain whether his engine was properly supplied for the trip. He had other duties to perform, in the way of examination of the appliances which he was to use in the performance of his duties. Though it was his duty in a measure to make some examination to see that his working place was safe, yet it was not his duty primarily to make the place safe. That was the duty of the master. There are instances where the master owes no duty to his servants to make the working place safe, and where that duty devolves upon the servant himself. . Those are cases where the servant is called to work in a place of known danger for the purpose of repairing defects, and where the nature of the service is such as to exclude the implication of any duty on the part of the master to make the place safe. *Southern Anthracite Coal Co.* v. *Bowen,* 93 Ark. 140.

There are also instances where the servant in the discharge of his duty is required to constantly change the condition of the working place, the nature of the work making the place more or less dangerous. *Grayson-McLeod Lumber Co.* v. *Carter,* 76 Ark. 69; *Arkansas Cotton Oil Co.* v. *Carr,* 89 Ark. 50; *Chicago, R. I. & P. Ry. Co.* v. *Grubbs,* 97 Ark. 486.

But this is not such an instance, and the cases referred to above do not apply here. Though, as just said, it was the duty of plaintiff to make some examination of the place to see that it was safe, yet he had the right to assume that those who had prepared the place for him had exercised ordinary care in that respect; and if in beginning to discharge his duties he was injured before he had had an opportunity to exercise the precaution imposed upon him, he cannot be held to have assumed the risk of the danger created by the negligence of other servants. The evidence in this case shows that the plaintiff was putting oil in his lamp for the purpose of commencing the performance of his duties when the lump of coal rolled down on him. It was dark, and he had had no opportunity to inspect the pile of coal on the tender. To hold that under these circumstances he assumed the risk of this danger would be to make him the absolute insurer of his own safety when he started in the performance of his duties, regardless of the negligence of others who owed him the duty of ordinary care to make his working place safe. The well-

established rule is that the negligence of the master, or the negligence of a fellow servant (under the statute making the master responsible for the negligent act of a fellow servant), is not an ordinary incident of the service, so that a servant is deemed to have assumed the risk of the danger. *Choctaw, O. & G. Rd. Co. v. Jones,* 77 Ark. 367. It is only where the servant is aware of the defect and voluntarily exposes himself to the danger that he can be said to have assumed such risk.

We are therefore of the opinion that the evidence was sufficient to warrant a submission of the question of negligence on the part of defendant's servants, and of the assumption of risk and contributory negligence on the part of plaintiff. These questions were properly submitted to the jury, and the verdict is conclusive upon us.

It is insisted that the court erred in permitting the plaintiff to prove the contract between the company and its firemen as to the condition of the coal to be placed on the tender, in regard to the size of the lumps, it being contended that there was no allegation in the complaint charging breach of duty in this respect. We think, however, that the charge of negligence in the improper loading of the tender was sufficiently broad to cover the charge of loading with coal of over-sized lumps. Loading coal in lumps too large amounted to improper loading. Besides this, we think it was proper, under the issues made by the pleadings, for the plaintiff to show that there was a contract regulating the size of the lumps, which had been violated. This was proper, for the jury might well have considered that in determining whether or not plaintiff was guilty of negligence in getting too near the coal pile. He had the right, to some extent, to assume that the tender had been equipped with coal of the size lumps called for in the contract. The jury could consider that in determining whether he was guilty of negligence in standing near the pile before he had examined it. If the size of the lumps had not exceeded the specifications of the contract, then no danger could possibly arise from standing too near the pile.

The instructions given by the court are not inconsistent with the views herein expressed, and it may be stated, without entering into a full discussion of the instructions, that none of them are found to be incorrect. Numerous instructions requested by

the defendant were all given by the court, and the case went to the jury upon instructions as favorable as defendant could ask. We conclude therefore that there is no error in the record, and the judgment is affirmed.