ABBIE DUGGAN *v.* THOMAS J. HEAPHY.

November Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed May 13, 1912.

*Master and Servant—Injuries to Servant—Defective Machinery— Duty of Master— Assumption of Risk—Requisites of—Test of —Necessity of Servant's Knowledge of Defect—Contributory Negligence—Burden of Proof—Evidence—Question for Jury— Exceptions to Charge—Requisite Certainty.*

In reviewing a ruling of the trial court denying defendant's motion for a directed verdict, the evidence must be viewed in the light most favorable to plaintiff.

A master is bound to furnish his servant with machinery and appliances reasonably safe in view of the character of the employment.

Knowledge, actual or imputed, of a *defect* or imperfection in a machine, and not merely of its dangerous character, is essential to the assumption by a servant of the risk thereby caused.

In a servant's action for injury to her hand by having it drawn into a mangle while she was operating it, owing, as the evidence tended to show, to the lack of a guard rail with which the mangle was designed

to be, and before defendant owned it was, equipped, the question of defendant's negligence was for the jury.

In a servant's action for injury to her hand by having it drawn into a mangle while she was operating it, in consequence of the lack of a guard rail, the absence of which, the evidence tended to show, constituted a defect in the machine owing to defendant's negligence, plaintiff cannot be said, as matter of law, to have assumed the risk incident to operating the machine with that defect, where the evidence tended also to show that she knew nothing of such an appliance as a guard rail.

The doctrine of assumption of risk, in its true sense, applies only to extraordinary risks, for the real reason why a servant cannot recover for injuries resulting from encountering an ordinary risk is that, in respect of such risks, the master is not negligent.

A waiver is the intentional relinquishment of a known right.

The maxim governing the doctrine of assumption of risk is *volenti non fit injuria,* and not *scienti non fit injuria.*

A servant's knowledge, actual or imputed, of the dangerous character of a risk that he has undertaken does not charge him with the assumption of an extraordinary risk, unless he also has knowledge, actual or imputed, that it is not an ordinary risk.

In a servant's action for injuries, the master's defences of freedom from negligence on his part, assumption by the servant of the risk in question, and his contributory negligence, are wholly separate, distinct, and different defences.

Where a servant operating a mangle encountered no risks except such as she, without fault, supposed to be ordinarily and necessarily incident to its operation, she cannot be said to have assumed the risk of a defect that constituted an extraordinary risk.

A servant operating a mangle is bound to exercise the care of a careful and prudent man in the same situation, regardless of how existing and obvious dangers have been caused.

In a servant's action for injuries, though plaintiff has the burden of showing himself free from contributory negligence, he may discharge that burden without adducing evidence directly addressed to that negative proposition.

In a servant's action for injuries from having her hand drawn into a mangle while she was operating it, evidence considered, and *held* that the question of her contributory negligence was for the jury.

In a servant's action for injuries from having her hand drawn into a mangle while she was operating it in a hotel laundry, owing to the lack of a guard rail, with which the mangle was designed to be, and before defendant purchased it with the hotel was, equipped, on the issue of whether defendant before the accident knew that a guard rail belonged to the mangle and was there on his premises, plaintiff's witness, a head laundress under a former ownership of the hotel, and for a time under defendant's ownership, was properly allowed to testify that

during the former ownership she had removed the guard rail and laid
it away, and that she had told defendant's wife, the superintend-
ent of his laundry, where the rail was.

Defendant's wife, when called for him, having denied any recollection
of the above conversation, and, on cross-examination, having testified
that she never knew anything about the guard rail until it was put
on, it was not error to allow plaintiff further to elicit that the
guard rail was put on right after the accident, not for the purpose
of showing negligence on the part of defendant, but as tending to con-
tradict him and his wife as to their knowledge of the existence of the
rail.

An exceptor will be confined in the Supreme Court to the objection that
he stated below.

Where defendant presented twenty-five requests to charge, relating to
almost every conceivable question in the case, and excepted "to the
refusal of the court to charge according to each and every request,"
and "to the charge of the court as given in respect to each and every
request," and some of the requests could not have been properly
complied with, and others were complied with, no question was re-
served.

In a servant's action for injuries from a defective mangle that she was
operating, defendant's requested instruction: "Defendant is not re-
quired to give special instructions unless there is some concealed danger
about the machine," was in substance complied with by the instruc-
tions that plaintiff was bound to know what was obvious; that she
could not recover on account of known and obvious dangers; that
she was bound to take notice of the machine just as it was; and that
she was bound to see just what a prudent man would see.

Exceptions not briefed by the exceptor will not be considered.

CASE for negligence. Plea, the general issue. Trial by
jury at the March Term, 1910, Washington County, *Butler,*
J., presiding. Verdict and judgment for the plaintiff. The
defendant excepted. The opinion states the case.

*Senter & Senter,* and *Harry C. Shurtleff* for the defendant.

*W. N. Theriault, Lord & Carleton* and *Fred L. Laird* for
the plaintiff.

HASELTON, J. The plaintiff worked for the defendant
in the laundry of his hotel and received an injury by having
her hand drawn into a power mangle while she was operating

it. The action is case for negligence. The cause was tried by jury. Verdict and judgment were for the plaintiff. The defendant excepted.

The mangle in question, as the testimony tended to show it, is as follows: There is an iron steam chest six feet and ten inches long resting on frame work. The upper surface of this chest is concave, and a large cylinder twenty inches in diameter and of the same length as the chest and wrapped with felt and covered with canvas, is so fixed above the chest that it fits into the upper concave surface of the chest. The chest surrounds the lower half of the cylinder, and the two are in close contact except that when the machine is in operation the chest recedes from the cylinder about one-fourth of an inch on the receiving side. At the upper edge of the chest, and on the side at which the operator of the machine stands, and of the same length as the chest, is a brass cylinder four inches in diameter called an apron. The top of the apron is about three feet and four inches from the floor, and the top of the revolving cylinder is about two inches higher. The machine is run by water power, and when it is in use the steam chest is full of steam and is very hot. The apron is stationary and is from half an inch to three-fourths of an inch from the cylinder, and as the latter revolves, in the operation of the machine, the stuff to be ironed is fed over the apron. It is the duty of the operator to spread the stuff to be ironed over the apron and push it over and downward until it is caught by the machinery described, when it is drawn on and ironed. The exact line of contact between the cylinder and the steam chest cannot be seen by the operator on account of the position of the apron, but the point of contact at either end of the machine can be seen from the corresponding end. The cylinder revolves slowly making from three to five revolutions a minute. The way in which the revolutions are regulated was explained without objection by an expert who had examined this machine and was familiar with mangles of the make of that in question. He said: "There are four inch pulleys running approximately about one hundred revolutions. On the end of those pulleys are what is called a pinion-gear, about four inches in diameter, that runs into another gear about twenty inches, and a return on the same. There is another

four inch pinion-gear running into a gear on the roll, bringing the thing down to about twenty to one from the original start of the power, in other words reducing it approximately from the one hundred revolutions down to approximately about five revolutions of the roll a minute." He explained also, without objection, that the steam chest was pressed up against the roll by springs underneath regulated by a screw.

The machine in question was one of the Poland Company's manufacture, and the evidence tended to show that machines of this make are ordinarily equipped with guard rails, and that this machine had been equipped with a guard rail which fitted into small sockets, and that when the guard rail was in place is was about half an inch above the apron over which the material to be ironed was to be placed, and that its purpose was to keep the hands of an operator from being drawn in where they would be injured, and that without a guard rail the machine was not a safe appliance for mangling. The machine was bought by the defendant of a former owner of the hotel and the guard rail, which had been removed under the former ownership, had not been in place after the purchase up to the time of the injury to the plaintiff.

The plaintiff was a woman about forty-three years of age who had been in this country about fifteen years. During the greater part of that time she had done chamber work. The matter of her experience with a mangle was very fully gone into in evidence. What appeared in that regard was that before she entered the employ of the defendant she had worked more or less at laundering with a small mangle turned by hand. For a few months before the accident she had worked for the defendant in his laundry. Her work there was upon the washing machine and, as she testified, as an all-around helper. Mrs. Heaphy, who superintended the laundry, and who hired the plaintiff, testified that it was no part of the plaintiff's work to operate the mangle. The plaintiff testified that she had on a few occasions run articles through the mangle when Mrs. Cashen, the head laundress and mangle operator, was at her side. But the tendency of all the testimony was to show that the plaintiff could have done very little of this work, for Mrs. Heaphy who had charge of the laundry testified that she was there a good

deal and that she never saw the plaintiff working on the mangle. And Mr. Heaphy, who, as the testimony tended to show, was frequently in the laundry, testified that he never saw the plaintiff at work on the mangle.

The accident happened while the defendant and his wife were away on a visit, and while Mrs. Cashen, the head laundress was on a short vacation; and the claim of the defendant was, and his evidence dended to show, that the plaintiff at the time of the accident was at work upon the mangle in disregard of instructions that it should not be operated in the interval referred to, liability of an accident being, as the defendant testified, one reason for the instructions. On the contrary the plaintiff testified that she was asked by Mrs. Heaphy to do the mangling of the pieces except the tablecloths, during the visit and vacation referred to. Here was a sharp contradiction in the evidence and in considering as we are about to do, whether or not the court erred in not directing a verdict for the defendant, we are bound to view the evidence in the light most favorable to the plaintiff.

At the close of the evidence the defendant moved, on various grounds, that a verdict be directed in his favor. One of the grounds, stated in various ways, was that the evidence did not tend to show negligence on the part of the defendant.

The defendant was bound to furnish the plaintiff with reasonably safe machinery and appliances, reference being had to the character of the employment, and we think there was evidence fairly tending to show that the defendant was negligent in respect to providing for use this kind of a mangle without the guard rail provided for and ordinarily used upon it; and so the question of negligence on the part of the defendant was for the jury. *Geno* v. *Falls River Paper Co.*, 68 Vt. 568; *Morrisette* v. *Canadian Pacific Railway Co.*, 74 Vt. 232; *McDuffey's Admrx.* v. *Boston & Maine R. Co.*, 81 Vt. 52; *Vaillancourt* v. *Grand Trunk Ry. Co.*, 82 Vt. 416; *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489.

A second ground of the motion, stated in different ways, was that the plaintiff assumed all the risks which she encountered.

If the absence of the guard rail constituted a defect or imperfection in the machinery owing to the master's negligence,

and it was for the jury to say whether or not it did, the plaintiff cannot be said, as matter of law, to have assumed the risk of working with such defective machinery, for according to the tendency of the evidence she knew nothing of such an appliance as a guard rail. The law did not impose upon her the duty of becoming an inventor, and of determining that such a machine should have a guard rail, and did not hold her to have assumed the risk consequent upon the lack of an appliance which she knew nothing about. The claimed duty of invention on the part of an employer was effectually disposed of in *Farrington* v. *Rutland Railroad Co.*, 72 Vt. 24; and it needs no discussion to show that such duty does not exist on the part of an employee.

There can be no assumption of risks due to a master's negligence in providing defective machinery unless the servant knows, or must be taken to know, both of the defect and of the danger attending it. The doctrine is thus stated in *Skinner* v. *C. V. R. Co.*, 73 Vt. 336, 340, where it is said: "If a servant, knowing that the master has neglected his duty and that he is thereby subject to dangers not incident to the employment, continues in the service, the increased danger becomes an incident of the service which he assumes, and, for an injury resulting therefrom, the master is not liable." This passage is, without change but with due credit, incorporated into the text of the third edition of Cooley on Torts, and is given as a correct statement of the law on the point under considerations. Cooley, Torts, 1045.

That a servant does not assume the risk of encountering dangers caused by the master's negligence unless he knows, or must be taken to know, that such dangers result from defective conditions is the clearly expressed doctrine of the still earlier case of *Severance* v. *New England Talc Co.*, 72 Vt. 181. There an employee was injured because the wall of an excavation had not been left in a reasonably safe condition. The Court said: "There was no special assumption of this risk, for it does not appear that the plaintiff knew that the wall had been left in an unnecessarily dangerous condition."

In *Johnson* v. *Boston & Maine Railroad*, 78 Vt. 344, 347, this Court said: "So it is that a servant, when, in the course of his employment, a special and obvious risk is presented to

him, one not ordinarily incident to the business, may, as a. rule, decline to accept it; but if he choose to encounter it, he assumes it."

But a special risk is not "presented to him" when it appears in the guise of an ordinary risk, and he does not "choose to encounter" such a risk unless he knows its nature.

In *Williams* v. *Norton Bros.*, 81 Vt. 1, 8, it is said of the plaintiff: "Whether he had an opportunity to see defects or was chargeable with knowledge of them were questions of fact for the jury to determine upon all the evidence;" and *Severance* v. *New England Talc Co.*, 72 Vt. 181, is referred to. n *Vaillaincourt* v. *Grand Trunk R. Co.*, 82 Vt. 416, a case much In point, it was held that such knowledge of dangerous conditions as was admitted was, on the question of the assumption of risk, immaterial "in the absence of actual or imputed knowledge of the defect which caused the accident and a comprehension of the danger attending it."

The doctrine that in order to the voluntary assumption of an extraordinary risk one must know not only of the dangers he is encountering, but also that he is encountering risks due to defects or imperfections, runs through the case of *Marshall* v. *Dalton Paper Mills*, 82 Vt. 489. For the claim is there combatted that the plaintiff therein knew or ought to have known that the defendant had neglected its duty.

That knowledge, actual or imputed, of a defect or imperfection and not merely of a dangerous condition is essential to the asumption by an employee of the risk thereby caused is the doctrine of *Miner* v. *The Franklin County Telephone Co.*, 83 Vt. 311.

Of course, it is often the case that knowledge of a danger, which exists in consequence of a defect, carries with it knowledge that the danger is due to such defect, and so it has not been found necessary in every case to state the whole law of the subject, but the rule herein stated is not questioned in this State. A servant is not required, for the protection of his rights, to qualify himself to pass upon the sufficiency of the machinery furnished him for use, nor upon the methods by which his master conducts his business, but may assume that the master has fulfilled his obligations. *Miner* v. *Franklin County Telephone Co.*, 83

Vt. 311, 320; *Vaillancourt* v. *Grand Trunk Ry. Co.*, 82 Vt. 416, 435, *Drown* v. *N. E. Telephone etc. Co.*, 80 Vt. 1, 15.

The true doctrine of the assumption of risk is well and briefly stated by the United States Supreme Court in *Washington etc. R. Co.* v. *McDade*, 135 U. S. 570, where the statement of the doctrine as applied to that case is this: "If the employee knew of the defects in the machinery from which the injury happened and yet remained in the service and continued to use the machinery without giving any notice thereof to the employer, he must be deemed to have assumed the risk."

A statement so full and exact as to challenge criticism is found in *Choctaw etc. R. Co.* v. *McDade*, 191 U. S. 64. We quote: "The question of assumption of risk is quite apart from that of contributory negligence. The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in performing such duties. The employee is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation. This rule is subject to the exception that where a defect is known to the employee, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge and without objection, without assuming the hazard incident to such a situation. In other words, if he knows of a defect, or if it is so plainly observable that he may be presumed to know of it, and continues in the master's employ without objection, he is taken to have made his election to continue in the employ of the master, notwithstanding the defect, and in such case cannot recover."

The rule that knowledge of the defect as well as of the danger is essential to the assumption of risk has been followed in the Federal courts generally and is nowhere made more clear than by Judge Lurton in *National Steel Co.* v. *Hore*, 155 Fed. 62, where he says: "To defeat an action by the defence of assumption of risk, the employer must show not only that the servant knew of the negligence of which he complains, but that he knew and understood or ought to have known and appreciated, the

increased danger to which he voluntarily exposed himself."
He emphasizes the distinction between knowledge of defects
and knowledge of risks therefrom arising, and makes both
essential to defeat recovery on the ground of assumption of
risk when an injury has resulted from the furnishing of defective
appliances by the master.

In *Chicago etc. Ry. Co.* v. *Prescott*, 8 C. C. A. 109, 23 L.
R. A. 654, 59 Fed. 237, the Court said: "The doctrine of
voluntary assumption of a risk as distinguished from contributory negligence, is generally applied in cases arising between
employer and employee, where an employee, without any
valid excuse for so doing voluntarily undertakes to work with
a tool or any appliance which is known to be defective."

In *Kattalla Co.* v. *Rones*, 186 Fed. 30, a case decided in the
circuit court of appeals, an instruction was approved which
made it essential to the assumption by a servant of an extraordinary risk consequent upon the character of the place in
which he is required to work that "it is apparent and obvious
to him that the employer has not furnished a reasonably safe
place."

The supreme court of Pennsylvania has stated the doctrine in its application to machinery with great precision.
It has said: "He, [the servant] certainly has the right to
expect his employer to provide machinery, tools, and appliances that are reasonably safe for his use, and he assumes
no risks growing out of their defective character, unless
he has been fully advised that they are defective and dangerous. He has the right to suppose that his employer
has provided such guards and means of protection from
injury in the use of the machinery, tools, and appliances
as are usual and reasonably necessary for his safety." *Rummell* v. *Dillworth etc. Co.*, 131 Pa. 509, 19 Atl. 345, 17 Am.
St. Rep. 827.

The rule thus stated is applied in *Cargill* v. *Philadelphia
Towel Supply & Laundry Co.*, 185 Pa. 269, 39 Atl. 962, the facts
of which are not fully stated in the opinion, but are clearly
set out by reference in *Bartholomew* v. *Kemmerer*, 211 Pa. St.
877, 60 Atl. 908. Both cases, it may be well enough to mention,
were cases in which it was held that the plaintiff was entitled

to go to the jury because of the absence of a guard rail on a. mangle in the operation of which she was injured.

"Assumption of risk in its true sense," says the supreme court of Iowa: "Has reference to risks arising out of the negligence of a master when such negligence is known to the employee and the danger therefrom appreciated by him." *Duffey* v. *Consolidated Block Coal Co.*, 147 Iowa 225, 124 N. W. 609, 30 L. R. A. ( N. S.) 1067.

When the Iowa court speaks of the assumption of risk in its true sense it is by way of distinction between that and what is quite commonly called the assumption of the natural. and ordinary risks of an employment. For to say that the servant assumes the latter is but another way of stating the rather obvious truth that the servant cannot recover on the ground of the negligence of the master unless the master has been negligent.

Already the court last referred to had declared that the servant "never takes the risk of the master's negligence under any circumstances, save when he knows of such negligence, or as a reasonably intelligent person ought to have known of it." *Martin* v. *Light Co.*, 131 Iowa, 724, 106 N. W. 359.

In *Tyrrell* v. *Kane Co.*, (Iowa) 128 N. W. 536, which was a mangle case, the supreme court of Iowa in distinguishing the case before it from another applied the doctrine stated in the following discriminating paragraph: "In that case the employee knew that proper safety appliances were absent and. continued in the employment without objection notwithstanding, such absence. In the case before us, plaintiff, while appreciating, the danger of getting her fingers caught in the revolving rollers,. knew nothing about any appliances being practicable or usual. which would have lessened the danger, in other words the plaintiff, while assuming the risk generally incident to employment, about such a machine, did not assurance the risk involved in the absence of safety appliances for she had no knowledge that. such safety appliances, as would lessen the danger had been omitted."

The defendant in the case cited had neglected a statutory duty but, because of the general principle above stated, the

court found it unnecessary to decide whether or not the plaintiff could assume the risk arising from such neglect.

In Ohio the nature of the assumption of a risk has been clearly expressed, for, in distinguishing the doctrine in that regard from that of contributory negligence the supreme court of that state has said: "Acquiescence with knowledge is not synonymous with contributory negligence. One having full knowledge of defects in machinery with which he is employed may use the utmost care to avert the dangers which they threaten." *Hesse* v. *Columbus etc. R. Co.*, 59 Ohio St. 167, 50 N. E. 355.

In speaking of the assumption of extraordinary risk the supreme court of Connecticut says: "It arises from the fact that the servant knowing of the abnormal risk has willingly encountered it." *Worden* v. *Gore-Meehan Co.*, 78 Atl. 432.

And elsewhere the same court states the rule by saying: "A servant assumes the risk when he knows the defective condition of an instrument, appreciates the danger from its use, and voluntarily encounters the risk." *Elie* v. *Cowles & Co.*, 82 Conn. 236, 73 Atl. 258.

The doctrine of the assumption of risk is grounded on the idea of intelligent choice and is well expressed by the supreme court of Massachusetts thus: "The servant assumes the danger of the employment to which he voluntarily and intelligently consents, and while, ordinarily, he is to be subjected only to the hazards necessarily incident to his employment, if he knows that proper precautions have been neglected, and still knowingly consents to incur the risk to which he will be exposed thereby, his assent dispenses with the duty of the master to take such precautions." *Leary* v. *Railroad*, 137 Mass. 580, 2 N. E. 115.

In a recent Massachusetts case the doctrine of assumption of risk is again stated with great clearness. After a statement of the principle that an employer is bound to furnish his employee with reasonably safe tools and appliances the court says: "If, however, when furnished with an improper tool or unsafe appliance, the workman fully comprehends its defects and imperfections, and realizes the nature and extent of the danger which will arise from their use, and voluntarily, without compulsion or exigency, intelligently and intentionally proceeds to use

them he must abide the consequence." *O'Toole* v. *New England Gas & Coke Co.*, 201 Mass. 126, 87 N. E. 608.

This case is especially instructive because, for one reason, the court was not misled by the familiar character of the appliance in question, which was a wheelbarrow.

In *Klofski* v. *Railroad Supply Co.*, 235 Ill. 146, 85 N. E. 274, the court express the doctrine thus: "The master's negligence is not an ordinary and usual risk of the employment, hence the servant does not assume dangers arising therefrom by his contract of hiring, but the servant knowing of such negligence may assume the risk."

This case follows *Browne* v. *Siegel etc. Co.*, 191 Ill. 226, 60 N. E. 815, where the court, after stating the duty of the master in respect of machinery and appliances, adds: "But even if the master fails in such duty, and there are, to the knowledge of the servant, defects in such machinery, means, appliances, which render their use hazardous, he is held to have assumed the hazard."

A further citation is essential to a full statement of the doctrine as understood in Illinois: "A servant who knows that there are dangerous defects on premises where he works, and does not make complaint and ask for repairs or improvements necessary for his safety, assumes the risk involved." *Cichowa* v. *International Packing Co.*, 206 Ill. 346, 68 N. E. 1083.

In Arkansas the matter is put in this way: "It is only where the servant is aware of the defect and voluntarily exposes himself to the danger that he can be said to have assumed the risk." *St. Louis etc. Ry. Co.* v. *Vann*, 135 S. W. 816, (Ark.)

In Texas it is held that to charge an employee with the assumption of the risk of using a defective implement it must appear "that the employee knew of the defects or that in the exercise of ordinary care in the discharge of his duties, he must necessarily have acquired the knowledge." *Texas Co.* v. *Garrett*, 134 S. W. 812, (Texas Civil Appeals).

The rule as to the assumption of an extraordinary risk consequent upon defective machinery is fully stated in *Bloom* v. *Yellowstone Park Association*, 86 Minn. 237, 90 N. W. 397, where, among other things it is said by Chief Justice Start: "To justify the court in a given case in holding as a matter of

law that the servant assumes the risk incident to the use of defective and dangerous machinery, it must clearly appear from the undisputed evidence that he knew of the defects therein."

In that case the plaintiff was injured in the operation of an unguarded mangle. The court made short work of the question of negligence on the part of the defendant, declaring that all modern mangles are provided with a guard, that it was perfectly practicable for the defendant to have a guard on this machine, and that with such a guard the machine was reasonably safe and without it dangerous. But in that case the plaintiff had had considerable experience in feeding a mangle properly equipped with a guard, it appeared that she knew of the guard and its purpose, and the court held that from the evidence no other reasonable inference could be drawn than that "she knew and appreciated the defects in the mangle" and the risks incident to the operation of the machine in its defective condition.

In South Carolina it is held that assumption of risk is in the nature of a waiver, on the part of the servant. *Bodie* v. *Charlestown etc. R. Co.*, 61 S. C. 468, 478, 39 S. E. 715; *Hall* v. *Northwestern etc. R. Co.*, 81 S. C. 522, 62 S. E. 848.

The New York court of appeals calls the assumption of an extraordinary risk "an independent act of waiver" on the part of the servant "evidenced by his continuing in the employment with a full knowledge of all the facts." *Drake* v. *Auburn City Ry. Co.*, 173 N. Y. 466, 66 N. E. 121.

In *Blanchard* v. *Vermont Shade Roller Co.*, 84 Vt. 446, where a servant was promised protection from certain risks this Court said: "The protection promised was to take the place of the ordinary safeguards, the presence of which might have hindered the defendant's work, but the absence of which made the place unsafe; and the plaintiff was entitled to one thing or the other unless both were waived."

Many courts speak of the assumption of risk as in the nature of a waiver; but if anything in the law is certain it is that a waiver is the intentional relinquishment of a known right. *Webster* v. *State Mutual Fire Ins. Co.*, 81 Vt. 75; *Christenson* v. *Carleton*, 69 Vt. 91, 37 Atl. 226; *Donohue* v. *Windsor County Ins. Co.*, 56 Vt. 374, 382.

A waiver presupposes a knowledge of the right waived, and there can be no waiver by a servant of the right to better protection unless he knows of the facts which give him such right. So all the courts which treat the assumption of risk as a waiver, must be taken as holding that there can be no assumption of the risk consequent upon the use of defective machinery unless the servant knows not only that it is dangerous but also that it is defective.

In *Smith* v. *Baker*, 1 App. Cases, (1891) Lord Morris pertinently said: "how can the plaintiff be held to voluntarily incur a danger from unfit machinery the unfitness of which he was admittedly not aware of?" This was the unanswerable reasoning which governed the decision of a case that had been vigorously contested at every stage. The later case of *Williams* v *Birmingham etc. Co.*, 2 Q. B. (1899) 338, an action at common law, shows that the doctrine of the assumption of risk as herein maintained is established in England.

The governing maxim is *volenti non fit injuria* not *scienti non fit injuria*, *Drown* v. *N. E. Telephone etc. Co.*, 80 Vt. 1, 13; *Thomas* v. *Quatermaine*, 18 Q. B. D. 685; and this is so because the former expression is inclusive of the latter and makes it tautological to state the maxim in the form used by Bracton, who says *volenti et scienti non fit injuria*, and who labors to avoid misunderstanding by talking of one who has been freely willing, —"*gratis voluerit.*"   5 Bracton, 262, (Twiss' Ed.) f. 413b.

That knowledge, or imputed knowledge, of the dangerous character of a machine does not charge the servant with the assumption of an extraordinary risk unless he knows or must be taken to know that the risk is not an ordinary one must be true, for otherwise there would be no meaning in what is generally said as to the bearing of complaints to the master about defects in machinery and of promises by the master to repair. *Washington etc. Co.* v. *McDade*, 135 U. S. 554, 570; *Harris* v. *Bottom*, 84 Vt. 28.

The duty of the servant to give notice or make complaint of defects that he does not know of has never been consciously recognized by any court.

When it is said as it is in many of the cases cited that a servant assumes known risks and dangers it is to be understood that

34

the knowledge referred to relates to the source and nature of the risks and dangers as well as to their character and extent, and such general expressions are to be construed in the light of the specific statements to which reference has been made.

Any other view results in a hopeless confusion between the doctrine of assumption of risk and that of contributory negligence, or in the mistaken idea that they are the same, or near enough the same, for practical purposes, or in speaking of contributory negligence as assumption of risk in a secondary sense.

As has been sometimes commented on, it is by no means always clear whether a particular discussion relates to contributory negligence or to the assumption of risk, or, indeed, to negligence on the part of the master. But non-liability of a master because he has not been negligent, his non-liability because his servant has voluntarily assumed a risk in encountering which he had been injured, and non-liability of the master because of the contributory negligence of the servant, are separate and distinct and there are abundant reasons why only harm can come from their confusion. Note to *Scheurer* v. *Bannar Rubber Co.*, 28 L. R. A. (N. S.) 1215.

What is here said is not to be understood as in any way derogating from the doctrine that an employee, whatever his knowledge, cannot assume a risk consequent upon his employer's neglect of statutory duty imposed in the exercise of the police power. *Kilpatrick* v. *Grand Trunk R. Co.*, 74 Vt. 288, 99 Am. St. Rep. 887.

The above case, twice here, 74 Vt. 288, 72 Vt. 263, shows the necessity of clearly distinguishing between assumption of risk and contributory negligence, for it is therein held that while there can be no assumption of the risk caused by the employer's neglect of such a statutory duty, nevertheless, in such case contributory negligence may defeat recovery.

Since the evidence here tended to show that the plaintiff was encountering no risks except such as she supposed to be ordinarily and necessarily attendant upon the operation of the mangle, it cannot be said that she knowingly and intelligently chose to assume the risks consequent upon a defect in the machinery unknown to her.

No reference has thus far been made to the case of *Wiggins* v. *E. Z. Waist Co.*, 83 Vt. 365, for, except that it grew out of an injury incurred in the operation of a mangle of some sort, it has little in common with this case. There the mangle, such as it was, had upon it a guard rail which was inadequate and so the operator was not left to conjecture as to whether there was such a device, and it was held that the whole situation was one of which the plaintiff had full understanding. The case will again be referred to.

Though the plaintiff did not, as matter of law, assume the risk of the defect pointed out, still she was bound to exercise the care and prudence of a careful and prudent person in the situation in which she was and with reference to the existing and obvious dangers however they may have been caused; for "the care and prudence of a prudent person in any circumstances depends upon the nature of those circumstances." *Harris* v. *Bottom*, 84 Vt. 28, 34, 35, *Hartigan* v. *Deerfield Lumber Co.*, 85 Vt. 133.

In *O'Toole* v. *New England Gas & Coke Co.*, 201 Mass. 126, 87 N. E. 608, it is well said of the duty of care on the part of the employee: "This duty rests on him equally, whether the employer had done his duty or has failed in its performance. The standard of duty for the employee is the same, whether he is provided with tools and appliances which are in good or in bad condition. He must at all times be in the exercise of due care." This quotation is from the wheelbarrow case in which, for the reason already stated, it was held that it could not be said, as matter of law, that the plaintiff had assumed the risk in encountering which he was injured, and in which it was further held that the question of contributory negligence was for the jury.

It is held in this State that in a negligence case the burden of showing freedom from contributory negligence is on the plaintiff. But in order to sustain this burden it is not necessary that there should be evidence distinctly directed to that negative proposition. *Barber* v. *Essex*, 27 Vt. 62, 69; *Hill* v. *New Haven*, 37 Vt. 501; *Fassett* v. *Roxbury*, 55 Vt. 552; *Manley* v. *Delaware & Hudson Canal Co.*, 69 Vt. 101; *Winifred Bros.* v. *Rutland R. Co.*, 71 Vt. 48; *Sherwin* v. *Rutland R. Co.*, 74 Vt. 1; *LaFlam*

v. *Missisquoi Pulp Co.*, 74 Vt. 125; *Kilpatrick* v. *Grand Trunk Ry. Co.*, 74 Vt. 302; *Morris* v. *Trudo*, 83 Vt. 44.

In the examination of the plaintiff counsel for both parties required her to illustrate, by holding a towel before her, the way she was doing the work at the time of the accident, and while this fact makes it somewhat exceptionally difficult to judge of the tendency of her testimony, it must be said that her testimony fairly tended to show that she was free from contributory negligence.

The defendant argues the case largely upon the claim that this machine was like an ordinary clothes wringer, only larger, but the description of the machine is inconsistent with this claim. Some mangle cases in which recovery has been denied turn upon the fact that the cloth is, before the very eyes of the operator, drawn between two rolls revolving inwardly like the rolls of a clothes wringer, so that it is made apparent at a glance that if the hand follows the cloth it can touch nothing stable like the steam chest here, but must inevitably be grasped and carried forward by the rollers if it is allowed to follow the cloth too far. Of this class was the Wiggins case, 83 Vt. 365.

Of course, as is claimed, the plaintiff knew that the mangle was hot and that the tendency of the machine would be slowly to draw in things once gripped by it if they were not too large. But the evidence on her part tended to show that she had not actual or imputed knowledge of the full situation; that she, in fact, knew nothing of the amount of power driving this slowly revolving cylinder, geared as it was, and that she had no full appreciation of the difficulty or impossibility of stopping or pulling back her hand if it should once go too far.

The plaintiff testified that at the time she was hurt she was looking right at her work, right at the towel, and observing how it was going, and not looking at the cylinder. One ground of the claim that the plaintiff was guilty of contributory negligence is that this testimony showed that she was not in the exercise of due care "because she says she wasn't looking at the mangle but was looking down on the towel itself." Had she said she was looking at the cylinder and not at the towel which she was guiding, there would have been a stronger ground for the claim that her testimony as to where she was looking

showed contributory negligence. If she was looking down at her work the dangerous parts of the machine must have been within the range of her vision. The precise phraseology of a witness in such a matter is not often of much significance.

The defendant in fact claimed on trial that the plaintiff was not looking at her work as she claimed or at the machine, but that she was looking away at or for or after one Maggie Doyle. How this was it was, of course, for the jury to decide.

We have examined numerous cases growing out of injuries to operators of mangles. In some recovery has been had, in others it has been denied. It is very clear that such machines vary much in their construction, that each case must stand or fall upon the evidence peculiar to it, and that it would be unfortunate, not to say absurd, for the courts to undertake to develop a body of mangle law.

The plaintiff's counsel in an opening statement made a reference to what he claimed would be shown in regard to the guard rail; and there was evidence introduced in support of the claim made in the opening statement. The mangle in question was exhibited to the court and jury during the trial. At the time of its exhibition, the guard rail was also shown. There was no objection to the use made on trial of the machine itself, but the defendant had an exception to the admission of some of the evidence relating to the guard rail and its function, to the opening statement in regard to it, and to the ruling permitting the jury to see it. It is claimed that there was error in all this.

But the grounds of this claim have been fully considered in the discussion of the question of the assumption of risk.

Whether or not the defendant, or his superintendent prior to the accident, knew that a guard rail belonged on this machine and was there on his premises was a question in dispute. Mr. Heaphy testified that he did not have any such knowledge and Mrs. Heaphy, the superintendent of the laundry, testified that she did not. The sockets for it were on the machine, and Mrs. McCormick, the head laundress under a former ownership of the hotel, and for a time under the ownership of Mr. Heaphy, testified, under objection and exception, that she, during such former ownership, had taken the guard rail off and put it away, and

that she had told Mrs. Heaphy about it and where it was. The reply of Mrs. Heaphy to this notice, as given by the witness, ran on into a statement of Mrs. Heaphy's views as to the effect of Mrs. McCormick's action upon her right of recovery if she had got hurt. But with respect to this part of the conversation the defendant makes no point upon his brief, and so we dismiss it from consideration. The substance of the conversation tended to show the knowledge which the defendant's evidence denied and was admissible.

Mrs. Heaphy took the stand and denied any recollection of any conversation with Mrs. McCormick about the guard rail. She was cross-examined about that, and testified that she never knew anything about a guard rail until it was put on. Subject to objection and exception, the plaintiff's counsel was allowed to elicit testimony tending to show that the guard rail had been on the machine since the accident, had been put on right after the accident.

This evidence as the transcript shows was not received for the purpose of showing negligence on the part of the defendant in not having the guard rail on the machine before, and it would have been inadmissible for that purpose. *Place v. Grand Trunk Ry. Co.*, 82 Vt. 42. All that was claimed for it was that it tended to contradict both Mr. and Mrs. Heaphy, both of whom had said that they didn't know of the guard rail. The way the matter stood appears from what transpired in argument. Mr. Lord, of counsel for the plaintiff, referred to this testimony and upon objection being made said: "It goes to the testimony of both Mr. and Mrs. Heaphy to their knowledge of the existence of the guard rail. They said they did not know it was there. How did they have it to put on and not know what it was for?" The court permitted this line of argument but stated at the time that the evidence had no bearing whatever upon the question of whether or not the defendant was negligent in not having the guard rail on the machine before the accident. Counsel for the defendant expressed no objection to the right of the opposing counsel to make this argument from the evidence but said: "In view of what may be claimed for it we save the question."

The full transcript of the case is referred to and made controlling, and has been examined upon all points, and it is clear that the apprehension of the defendant's counsel that an improper argument might be based upon the evidence or an improper use otherwise made of it, was dispelled.

The plaintiff called as a witness W. J. Donovan who qualified as a machinist and engineer of very long experience. His experience, as testified to by him, included the setting up and repairing of laundry machines and laundry plants, including the plant of the Boston City Hospital, of which he had had charge as master mechanic for many years, and repairs of laundry plants about the hotels and public baths of Boston. His testimony was to the effect that as a machinist and engineer he had become familiar with various kinds of mangles, of which four or five kinds had been looked after by him in the Boston City Hospital. His testimony tended to show special familiarity with the mangles manufactured by the Poland Company, which was the kind of mangle in question; that he had done work for the company and had made substantial parts of its mangle. His experience as a machinist and engineer, in matters not connected with laundries, we omit to refer to, but it was such that the court found him qualified as an expert in respect to machinery in general; and, under objection and exception, he was permitted to testify that the guard rail, which had been shown him, was ordinarily a part of a mangle of the kind in question, that its purpose was to prevent injuries to the hands of an operator, and that, with the guard rail on and properly adjusted, it would prevent an operator's hands from being drawn into the machine, and that the mangle in question, which also had been shown him, was, without the guard rail, not a safe appliance for use in mangling.

The defendant urges the inadmissibility of Mr. Donovan's testimony as to the purpose and effect of the guard rail and the inadmissibility of his opinion that the machine in question, without the guard rail, was not a safe appliance for mangling, on two grounds: The first is that all the testimony as to the guard rail was inadmissible; that we have already considered and passed upon. The only other ground urged in the brief is that the opinion of the expert that the machine was a dangerous

one to use without the guard rail was not within the scope of proper expert testimony. But that was not the ground of objection below. The objection there made was that the witness hadn't shown any expert knowledge on the subject of running a mangle, and that point is not relied on here. So neither point comes in for consideration. *Foster's Exr.* v. *Dickerson,* 64 Vt. 233; *State* v. *Noakes,* 70 Vt. 247, 257; *Graves* v. *Waitsfield,* 81 Vt. 84; *State* v. *Manley,* 82 Vt. 556; *State* v. *Roby,* 83 Vt. 121; *Jewell* v. *Hoosac Tunnel etc. R. Co.,* 85 Vt. 64, 81 Atl. 238; *Coolidge* v. *Taylor,* 85 Vt. 39, 80 Atl. 1038.

The defendant presented twenty-five requests to charge and excepted "to the refusal of the court to charge according to each and every request requested by the defendant," and "to the charge of the court as given in respect to each and every request requested by the defendant."

Some of the requests could not have been properly complied with. Some were complied with. They relate to every question that could readily be thought of in connection with the case. The general exceptions just referred to are like an exception to an entire charge, not wholly unsound, and avail nothing. The defendant specifically excepted to the failure of the court to comply with its request No. 22, and to the charge as given in respect thereto. The request was this: "The defendant is not required to give special instructions unless there is some concealed danger about the machine." If this request had been in terms complied with it would have been necessary for the court to have explained what it meant by "special instructions." The court, however, charged in various places that the plaintiff was bound to know what was obvious that she could not recover on account of known and obvious dangers, that she was bound to take notice of the machine just as it was, that she was bound to see just what a prudent person could see, and we think that the request was in substance complied with. In argument the defendant says simply that the request was sound law and that it was error for the court to refuse to comply with it; but no claim is based upon that part of the exception which was directed to the charge of the court upon the subject matter of the exception.

The defendant took in all nineteen exceptions to the charge. In argument his counsel say: "Exceptions to the charge of the court numbered 6, 7, 8, 9, 10, 11, 12, 13, 14 and 18, should be sustained for reasons already stated." The reference is to the reasons advanced in support of the motion for a verdict. These reasons have already been considered.

The bill of exceptions states particularly some of the exceptions, and refers generally to the transcript to show the exceptions taken. The transcript shows numerous exceptions to the evidence taken by the defendant, but in accordance with the well settled rule, we have considered only those relied upon by the defendant in his brief.

*Judgment affirmed.*

POWERS, J., dissents.

---

POWERS, J., dissenting. When the decision in this case was handed down, I announced a dissent on the question of assumption of risk. Since then, I have had an opportunity to give further study to the case with a transcript of the evidence before me, and I now desire to make my dissent somewhat broader than it was then stated.

In the first place, the case decided by the majority is not the case made by the record. The decision of the majority goes upon the ground, (1) That it was negligence on the part of the defendant to furnish the plaintiff a machine to work with which was without a guard which had been an integral and important part of the machine; and (2) That the plaintiff did not assume the risk of operating the machine in the condition in which it was, because she was ignorant of the fact that there was such an appliance which belonged on the machine.

On both these points the burden of proof was, under our decisions, on the plaintiff.

I shall not criticise the conclusions of the majority so far as the first point is concerned; but I assert that its conclusions on the second point are wholly outside the record and unwarranted.

I am not going to say that the declaration is not legally sufficient to cover a case made on the theory that the plaintiff was relieved from what would otherwise be an assumption of the risk by the fact that she was ignorant that a guard belonged on the machine; I do say, however, that it is apparent from the declaration that it was not drawn with any such theory in mind, and it is utterly insufficient to suggest it to the defendant. Nor was the case tried on that theory. Nor was any evidence introduced tending to show that the plaintiff was ignorant of the fact that there was a guard which belonged on the mangle. To be sure, the matter came up at the trial, but it did not result in any evidence on that subject one way or the other getting into the record, In direct examination the plaintiff was asked this question: "At that time, up to the time you were there, did you know that there was—don't answer this until I tell you to— at the time of the injury, and all the time you were there working in the laundry, did you know that there was a guard rail for this mangle?" This question was never answered. Objection was made, the court sustained the objection, and counsel for the plaintiff withdrew the question. No further attempt to get in evidence on this subject was made. Some evidence was introduced to show the plaintiff's knowledge of the machine and her ignorance of the dangers, but nothing having a legal tendency to establish her ignorance of the guardrail was elicited. The burden of proof was as I have said, on the plaintiff and in the absence of evidence on this subject she failed to make a case to which the theory of the majority could be applied. She was required to produce evidence having a reasonable tendency to support this issue, and having failed to do so, the case stands for decision precisely as it would if the machine had never had a guardrail.

The caution given the witness in the question,—not to answer until told—shows that counsel had a pretty definite idea that the evidence was not proper, and his prompt withdrawal of the question when it was objected to strongly indicates that such idea amounted to full conviction. But turning to the charge, I find abundant confirmation of my statement that the case was tried below without evidence or claim that the plaintiff was ignorant of the guardrail. For the court, time

and again, told the jury that the plaintiff must take the machine as it was, and if she appreciated its dangers she assumed the· risk. The court called attention to the fact that a guard had been taken off this machine, but said not a word on the subject of the plaintiff's knowledge or ignorance of this fact. At the close of the charge, counsel for the plaintiff excepted to what the court had said as to its being obvious to the plaintiff that there was no guardrail on the machine, saying: "We claim: she did not have knowledge enough of the machine to ever know there was such a thing." And again, her counsel ex-- cepted to what the court said about the servant's knowledge of the master's neglect as to the guard-rail, saying: "We claim that is improper as there is no evidence that she knew anything about a guardrail." And yet again, counsel excepted to what the court said to the effect that she was bound to know what was obvious as to the guard-rail, saying: "We claim that her knowledge of the machine was not sufficient, that she was not employed originally as a mangler." But no claim of this kind had been previously made and there was no evidence· to support it, so the court very properly refrained from modifying the charge in respect of these matters. This is of especial significance as the record shows that the court gave a supple- mental charge covering various matters to which counsel called its attention, and that the jury came in three times for instruc-- tions and that on each occasion the court recharged them covering substantially the whole case, yet made no allusion to the plain-- tiff's ignorance of the guard, nor did counsel make further men- tion of the matter. So I say that the case presented was that of the ordinary unguarded mangle, in the hands of a mature,. intelligent and experienced operator, to whom the conditions and dangers, not only ought to have been, but actually were fully understood and appreciated. The plaintiff made a feeble —I might say pitiful—attempt to deny knowledge, but the· cross-examination left nothing worthy of submission to the jury on this subject. To say that one who testifies in general terms that she did not know the dangers of a machine and then admits· that she knew each one of them when categorically asked about them, could go to the jury on the question, would be to announce· a proposition altogether too pregnant with danger.

Taking the case as it was decided, I wish to make clear at the outset just where I part company with the majority. They say that before a servant can be held to assume the risk he must know of the defect as well as the danger. And when they use the word "defect" they mean a condition existing through the negligence of the master. So, in the view of the majority, it comes to this: A servant must know that the physical condition which is presented to him is one which would not exist if the master had discharged his duty toward him; that his master has neglected a duty owed him; that the risk involved is one which the law puts upon the master; and that if he continues in the work the law will shift the risk on to himself.

The rule I stand for is this: If a servant knows the physical conditions that are presented to him, and appreciates just how those conditions affect his safety in the prosecution of his work, and voluntarily continues in the service, he assumes the risks, whatever they are and however occasioned. Various cases from other jusridictions are referred to by the majority as sustaining their view. As briefly as possible, I wish to examine these cases:

*Chicago, etc. Ry. Co.* v. *Prescott*, 8 C. C. A. 109, 59 Fed. 237, 23 L. R. A. 654. It is true that in the course of his opinion the District Judge says what the majority accuse him of saying; but immediately following the statement quoted, and only separated therefrom by a period, he continues: "It is no doubt true, as a general proposition, that a person is not entitled to claim compensation for an injury which he has sustained by voluntarily encountering a known danger, which there was no occasion to encounter and that might as well have been avoided." It is apparent that there was no intention of announcing any such proposition as is embodied in the majority opinion. All that is said on this subject, however, is of no consequence, for the case was that of a person injured while attempting to cross a railroad track, and not a master and servant case at all. And, as the District Judge well says, when he was talking about the doctrine of assumption of risk, he was talking about something that did not concern the case; or, to use his own language: "With reference to the further contention of counsel—that the plaintiff voluntarily assumed the risk of crossing the tracks,

and should be precluded from recovering on that ground—it. seems sufficient to say that the rule involved has no application to the present case."

*National Steel Co.* v. *Hore*, 155 Fed. 62. It is true that Judge Lurton uses the word "negligence" as shown in the quotation in the majority opinion. But the case decides nothing of the kind. It was made to turn wholly on the plaintiff's. knowledge of the danger. The allegation which was wanting in the petition, as the court indicates, is that the plaintiff was "ignorant of the danger." The learned judge says: "To assume as a matter of law that a common laborer, such as Hore was, should have known that there was danger from the facts. known to him, is going too far. To determine the effect this. lacks the conditions known to him in producing hazard," etc. And again: "Now knowledge of the conditions which surround the doing of a thing by a workman does not always imply knowledge of the 'dangers which confront him."

*Katalla Co.* v. *Rones*, 186 Fed. 30. This was an action for injuries occasioned by the fall of the hammer of a pile driver. There was no "chock block" on the machine to prevent such: an accident. The case turned on the servant's implied knowledge of the physical situation. The court said: "A prudent person might have gone up and down as he did and his attention not have been attracted to the absence of the block, or the particular condition of the structure at the point where it should have been."

*Washington, etc. R. Co.* v. *McDade*, 135 U. S. 570, 34 L. ed. 235. That the paragraph quoted from this case, as interpreted by the majority, does not correctly represent the law of the case becomes perfectly apparent when the whole case is examined. The injury involved was received in an attempt to put a belt on to a moving pulley. Three specific instructions. were under review, of which one was as follows: "And (3) assuming that putting on the belt was attended with danger, the question to be determined by the jury was not whether the plaintiff knew of such danger, but whether a man of ordinary care and observation, in his situation would have known it,. as he must be presumed to possess that degree of intelligence;. and that if with such observation and care he would have known.

the danger, then in putting on the belt he assumed all the risks incident thereto."

Knowledge of the danger is thus made the test,— not knowledge of how that danger came into existence. No intimation is given that specific knowledge of the master's negligence, separate and apart from the dangers arising therefrom, is of any importance whatsoever. Yet, this instruction, with others was approved by the court in the following language: "We do not think there was any error in any of these instructions of which the defendant has any right to complain. The propositions contained in them are in strict accord with the principles laid down by the decisions of this court." True it is that in the course of the argument, the court speaks of the servant's knowledge of the defect in the machinery, but it is apparent that it means no more thereby than the physical conditions which caused the injury. No suggestion is made that the servant must know that this condition arose from the master's negligence. This is the language of the court: "Upon every question in the case— the safety or unsafety of the machinery, the ignorance on the part of the plaintiff of the danger of it, and the negligence of the plaintiff at the time of the accident— the evidence was controverted," and so made a case for the jury. Could the issues involved be more plainly stated? Is it not perfectly plain that the assumption of the risk was made to depend upon the servant's knowledge of the danger, alone?

*Choctaw, etc. R. Co.* v. *McDade*, 191 U. S. 64, 48 L. ed. 96. The majority place much reliance on this case; it is said that it contains a statement of the law "so full and exact as to challenge criticism." McDade, a brakeman, was killed by coming in contact with a water-spout while passing it on a freight car. The negligence of the master consisted in maintaining the spout so near the track and in such a position as to endanger a man riding on the top of a freight car. An instruction was under review, the exact language of which is not shown, but which, in the language of the court, "did not permit of recovery if he [McDade] either knew of the danger of collision with the waterspout, or, by the observation of ordinary care upon his part, ought to have known of it." This last clause was said to be too favorable to the defendant, but otherwise the instruc-

·tion was approved. That the court used the word "defect" to mean only the physical condition which caused the accident ·without regard to how it was caused, could not be plainer. Suppose McDade had known the spout was there, and under.stood and appreciated just how its presence affected his safety when riding by it, and he had chosen to ride by it as he did, ·can there be any doubt that he would have assumed the risk?

That the law of the Federal Supreme Court is not with the majority seems to be put beyond controversy by *Butler* v. *Frazee*, 211 U. S. 459, 53 L. ed. 281, from ·which the rule laid down in *Frazee* v. *Blanchard*, 83 Vt. 136, with only slight verbal changes, is borrowed. I quote Mr. Justice Moody: "One who understands and appreciates the permanent conditions of ma·chinery, premises, and the like, and the danger which arises therefrom, or, by the reasonable use of his senses, having in view his age, intelligence and experience, ought to have understood and appreciated them, and voluntarily undertakes to work under those conditions and to expose himself to those dangers, ·cannot recover against his employer for the resulting injuries. Upon that state of facts the law declares that he assumes the risk."

*Rummel* v. *Dilworth, Porter & Co.*, 131 Pa. St. 509, 17 Am. ·St. Rep. 827. The majority's quotation from this case is in·complete and stops in the middle of a sentence. That the true meaning of the court may appear, I quote the whole passage: "He certainly has the right to expect his employer to provide :machinery, tools and appliances that are reasonably safe for his use, and he assumes no risks growing out of their defective ·character, unless he has been fully advised that they are de·fective and dangerous. He has a right to suppose that his ·employer has provided such guards and means of protection from injury in the use of machinery, tools, and appliances as .are usual and reasonably necessary for his safety; and he cannot ·be held to assume the risks attendant upon their absence, unless ·such absence is apparent, or his attention has been called to it. If the business is one with which he is not familiar, he has a right to expect that its dangers will be pointed out to him, and that he will be instructed in those things necessary for him to know in order to his own safety. He cannot be held to assume

the risks of dangers of the existence of which he has no knowledge." Further on in the opinion it is said: "In view of the youth and want of experience in the business on the part of Rummel, it was necessarily a question for the jury whether his employer had sufficiently warned and instructed him about the dangers of the employment, and how to avoid them, or had done all that was reasonably necessary to protect him from injury." I respectfully submit that this case is not an authority for the majority.

Bartholomew v. Kemmerer, (Pa.) 60 Atl. 908. It is a fact that the court quotes with approval in this case the passage from the opinion in the Rummel case which appears in the majority opinion. And it gives a more complete statement of the case of Cargill v. Phil. etc. Co., 39 Atl. 962. Both these cases were mangle cases in which a guard which belonged on the machine had been removed by the master. Yet, and this is full of significance, the court does not in either case make allusion to the plaintiff's ignorance of this fact, nor does it in any way treat it as of the slightest consequence. The question of assumption of risk was not raised in the Cargill case; the defendant seems to have been satisfied to rely upon its claim that no negligence had been established; neither the court below, nor does the Chief Justice in his opinion make the slightest allusion to the law of assumption of risk. That I read this case correctly is evident from what is said of it in the Bartholomew case: "This court affirmed the judgment entered on the verdict, thereby holding that the case is for the jury where the evidence is conflicting as to whether the plaintiff was properly instructed before being placed at work at the mangle, whether the absence of a guard rendered the machine more dangerous, and whether the plaintiff herself was guilty of contributory negligence." Not a word about the assumption of risk.

Nor was the question of assumption of risk in the Bartholomew case. The opinion recites that counsel for the defendant in their printed argument say that the question for determination "is solely one of fact, and reduces itself down to whether there was a guard upon the mangle through which the plaintiff was injured." No defence was made on the ground of assumption of risk, it was simply claimed that the guard was in place.

This position of the defendant seems easier to understand when we take notice that all the witnesses except the plaintiff testified that the guard was in place. The trial court ruled the case against the plaintiff on the ground of assumption of risk, and this was held error; but not because the plaintiff did not assume the risk, but because that was not the issue. This appears in the closing paragraph of the opinion. After stating just what the questions were which were determined in the Cargill case as above quoted, namely, whether the plaintiff was properly instructed, whether the absence of the guard rendered the machine more dangerous, and whether the plaintiff was negligent, the court added: "These were the questions raised in the case at bar, and the learned judge was in error in directing a verdict in favor of the defendant on the ground that the plaintiff assumed the risk of her employment."

There is nothing decided in these cases which throws any doubt on the rule stated in *Bowen* v. *Penn. R. Co.*, (Pa.) 68 Atl. 963: "In this state the law is settled that an employee, in accepting the employment, assumes all risks ordinarily incidental thereto, and all other risks open and obvious, the dangerous character of which he has had opportunity to observe;" Or on the rule stated in *Nuss* v. *Rafsnyder*, 178 Pa. 397, 35 Atl. 958, and approved in *Masterson* v. *Eldridge*, (Pa.) 57 Atl. 515, as follows: "When an employee, after having the opportunity of becoming acquainted with the risks of his situation, accepts them, he cannot complain if subsequently injured by such exposure. By contracting for the performance of hazardous duties, he assumes such risks as are incidental to their discharge from causes open and obvious, the dangerous character of which causes he has had an opportunity to ascertain;" or on the rule as stated in *Wilkinson* v. *Johns Mfg. Co.*, 198 Pa. 634: "With full knowledge of the nature of his employment and of the appliances used therein, he must be held to have assumed the risk involved in it."

*Duffey* v. *Consolidated Block Coal Co.*, 147 Ia. 225, 124 N. W. 609, 30 L. R. A. (N. S.) 1067. This case involved the law of assumption of risk only as a matter of pleading. It was held that it was an affirmative defence and must be pleaded. And that, since it was not pleaded, it was not involved in the case.

*Martin* v. *Light Co.*, 131 Ia. 724, 106 N. W. 359, was the same kind of a case. It involved a question of pleading. The remark of the court quoted by the majority was made in discussing the question of pleading. The editorial staff of the West Publishing Company, as shown by the head note in the reporter, understand the court to mean "A servant does not assume risks that arise from negligence of the master, unless they be shown to him or by the use of proper diligence are discernible by him." But the case is of little consequence here because the substantive law was not under discussion. As the court says: "The defendant's answer does not, in our judgment, raise the issue of assumption of risk."

*Tyrrell* v. *Cain & Co.*, (Ia.) 128 N. W. 536. This case is an authority for the theory adopted by the majority, and the opinion is by Judge McClain, in whose ability and learning I have great confidence. The mangle was being operated in violation of a statute. There is a ringing dissenting opinion by Chief Justice Diemer, who says that the decision is due to a reluctance of the court to decide the real question submitted, which is whether a servant can assume a risk arising from a breach of a statutory duty. On this question, he says the court is hopelessly divided, though he is ready to say (as this Court said in *Kilpatrick* v. *Grand Trunk Ry. Co.*, 74 Vt. 288) that such a risk could not be assumed. He then goes on to say: "It is not a question whether he knows the law or is familiar with the legal definition of negligence, but rather does he know that in its then condition it is dangerous; and does he know or should he have apprehended the risk to which he is exposed in working with the machine in its then condition."

*Hesse* v. *Colombus, etc. R. Co.*, 59 Oh. St. 167, 50 N. E. 355. This case involved only a question of pleading, and is not an authority for the majority since the question was not involved in the case on account of the lack of a proper averment.

*Worden* v. *Grove-Meehan Co.*, (Conn.) 78 Atl. 422. There is nothing in this case, rightly understood, which affords any support to the theory of the majority. The question under discussion, so far as it related to the case in hand, was purely a question of pleading. In holding that the defendant and not the plaintiff was to establish the assumption of the risk, the

court used the language quoted by the majority. But it is not all .quoted. The court had just said: "But extraordinary risks, such as are not ordinarily incidents of the employment, are not assumed by the servant. He may, by his conduct, assume them." Then, having said that the assumption of risk is not imputed to the relationship of the parties or contract of employment, the court goes on to say: "It arises from the fact that the servant knowing of the abnormal risk has willingly encountered it. In the absence of facts showing that he has assumed such a risk, he is not presumed to have done so, and he is not required to allege or prove that he had not assumed them or had no knowledge of them in order to make out a *prima facie* case." It is plain enough that the court makes knowledge of the risk, and not of the fact that it is extraordinary—that is, that it exists through the negligence of the master—the true test.

*Elie* v. *Cowles & Co.,* (Conn.) 73 Atl. 258. The plaintiff was non-suited at the close of his evidence. The case was one in which the defective machine and the dangers thereof were fully known and appreciated by the plaintiff, and he relied upon a promise to repair to relieve him of the assumption of the risk. The statements in the opinion are to be interpreted in view of the character of the case then in hand. The opinion in the case was filed June 10, 1909, and on July 20, 1909, *Girard* v. *Grosvenordale Co.,* (Conn.) 73 Atl. 747, was announced in an opinion written by the same judge who wrote the Worden case. The action was for injuries received as a result of running certain pulleys too fast, by reason whereof one of the pulleys burst, and being thus put out of balance, it tore down the shaft, which finally brought down a countershaft which hit the plaintiff and injured him. The plaintiff entered the room after the pulley broke and before the shafting fell, and saw and appreciated the situation and its dangers. He remained ten or twelve minutes, warning others of the danger, before the counter-shaft fell. The court instructed the jury that there was no negligence on the part of the defendant prior to the bursting of the pulley. This left nothing for the plaintiff's action to stand on, except the conduct of the master after the pulley went to pieces,—that is to say, his negligence

in failing to stop the machinery. It appeared that the defendant had, in fact, taken steps to shut it down, but it did not appear that the plaintiff knew this. The case was reversed on account of inconsistent instructions, which allowed a recovery though plaintiff assumed the risk; among other things the court said: "So far as these assignments have been pursued in argument, they revolve around the question, already considered, whether the plaintiff could assume a risk of injury resulting from the defendant's negligence. That he could do this is unquestionable; whether he did or not was, upon the evidence and claims of the parties, a question of fact for the jury, and could not properly be taken from them by the court, as it was requested to do by the defendant." Whether this holding can be sustained on any ground, I do not stop to consider; certainly it could not on the theory of the majority. Remembering that in Connecticut the burden of establishing assumption of risk is on the defendant, it cannot be said that this involves establishing the plaintiff's knowledge of the defendant's negligence for it is expressly stated that it did not appear that plaintiff knew what steps the defendant had taken to stop the machinery. So if the law of Connecticut was that the defendant must show, in order to establish assumption of risk, not only that the plaintiff knew the conditions and appreciated the dangers, but also that he knew that these conditions and dangers existed through the defendant's negligence, the charge would have been harmless, for the defendant had failed in the proof, and as plaintiff claimed, the doctrine of assumption of risk was out of the case. The case is conclusive that by the law of Connecticut, knowledge and appreciation of conditions and dangers are sufficient to charge a servant with the assumption of the risk. But if any further evidence regarding the rule in Connecticut were needed, reference might be had to *Tenney* v. *Baird Machine Co.*, (Conn.) 82 Atl. 639, which has just come to hand, wherein it is said: "It thus appears that he knew and appreciated the risks which he encountered in this, which was his ordinary employment, and he must be held to have assumed them."

*Leary* v. *B. & A. R. Co.*, 137 Mass. 580, 2 N. E. 115. Although it is true that the court used the language quoted by the majority, the result of the case shows that the true meaning

of the court is not that which is claimed for it. It was the case of one who fell or was thrown while attempting to get off a moving engine. The trial court held that he could not recover, and this was affirmed, on the ground that "no fault or negligence was shown on the part of the defendant. It was said that the danger was known to the plaintiff, and nothing is said regarding his knowledge of any negligence on the part of the defendant which produced that danger.

*O'Toole* v. *N. E. Gas & Coke Co.*, 201 Mass 126, 87 N. E. 608. There is little consolation to one adhering to the theory of the majority in a study of this case. The true meaning of the court's language is too plain to be mistaken. O'Toole did not know of the *defect*, that is to say, he did not know the physical condition of the wheelbarrow. He did not know that one leg was shorter than the other. That the court did not mean more than this, is apparent from this expression in the opinion: "A plaintiff may be precluded from recovery if he appreciates the character and extent of the danger, although he fails to understand the precise manifestation of it, which causes his injury, but he cannot be so precluded, unless he understands the nature and degree of the risk to which he is subjected."

There is little need of being in doubt as to the law of Massachusetts on this subject. It is thus stated in *Myers* v. *Hudson Iron Co.*, 150 Mass. 125: "The risk of the safety of machinery is not assumed by an employee, unless he knows the danger, or unless it is so obvious that he will be presumed to know it. He takes the risk of known or obvious dangers, and not of others." It is thus stated in *Anderson* v. *Clark*, 155 Mass. 368: "A person cannot be said to take a risk unless he knows, not only the condition of things, but also that danger exists in such condition. If, however, the danger is obvious, knowledge of the condition of things need only be shown." This rule, by the way, was quoted and approved in *Berming* v. *Medart*, 56 Mo. App. 443. It is thus stated in *Connolly* v. *Eldredge*, 160 Mass. 566, by Judge Holmes: "The danger to fingers from two cylinders in contact with each other, and seen to be revolving inwardly, is obvious to any person of ordinary powers, and plainly was understood by the plaintiff." And further: "If

there had been no guard across the shelf of the mangle, the plaintiff would have acted at her peril."

It is thus stated in *Glass* v. *Hazen Confectionery Co.*, (Mass.) 97 N. E. 627: "A guard may have been reasonably necessary to insure a safe machine. See *Wheeler* v. *Wason Mfg. Co.*, 135 Mass. 294. But the judge carefully instructed the jury in this connection that if the risk or danger was obvious—as the absence of a guard would be—there was no liability on the part of the defendant for using this machine and it was not bound to provide a different or safer one."

*Klofski* v. *Railroad Supply Co.*, 235 Ill. 146, 85 N. E. 274, It is apparent from a reading of this case that the rule contended for by the majority is not the rule of the Illinois court. For it is said in this very case: "If the servant has, or by the exercise of reasonable care would have knowledge of the existence of a particular danger, and continues in the employment without complaint, he will be deemed to have assumed the danger; and in respect to such dangers, it is wholly immaterial whether they arise from the negligence of the master or from other causes."

*Browne* v. *Siegel, Cooper & Co.*, 191 Ill. 226, 60 N. E. 815. It is said by the majority that the Klofski case follows this case and a quotation from the opinion is given to the effect that the servant must know of the defects before he can be held to have assumed the risk. The trouble is, too little is quoted to show the true meaning of the words of the court. The court goes on to say: "The servant assumes, not only the ordinary risks incident to his employment but also all dangers which are obvious and apparent, and if he voluntarily enters into or continues in the service, knowing or having means of knowing its dangers, he is deemed to have assumed the risks, and to have waived all claims against the master for damages in case of personal injury."

*Cichowicz* v. *International Packing Co.*, 206 Ill. 346, 68 N. E. 1083. This case is cited by the majority as essential to a full statement of the doctrine as understood in Illinois. Here again the majority quote too little. Restoring the sentence quoted by the majority to its place in the opinion and taking it with what should go with it, it appears thus: "And if a servant, knowing the hazards of his employment as the business

is conducted, is injured while engaged therein, he cannot maintain an action against his master for the injury merely on the ground that there was a safer mode in which the business might have been conducted. A servant who knows that there are dangerous defects," etc.

I think it is plain from these very cases that the rule in Illinois is the rule I am advocating.

*Bloom* v. *Yellowstone Park Asso.*, 86 Minn. 237, 9 N. W. 397. I admit that Chief Judge Start uses the word "defects" in defining the law of assumption of risk in this case. That he means anything more than the *condition* of things, I deny. It was a mangle case as stated, and it was held that the plaintiff had assumed the risk,—a result that could not have been reached if knowledge of defendant's negligence had been essential. The rule of that court is plain enough from *Wustilla* v. *Duluth Lumber Co.*, (Minn.) 33 N. W. 551, where it is said: "Again, it is one thing to be aware that machinery is defective, or in a particular condition, and another thing to know and appreciate the *risks* resulting therefrom. A man of ordinary intelligence and experience may know the actual condition of an instrument with which he is working, and yet not know the nature or extent of the risks to which he is exposed. The mere fact that a servant knows the defect does not necessarily charge him with contributory negligence or the assumption of risks growing out of these defects. The question is, did he knôw, or ought he, in the exercise of ordinary common sense and prudence, to have known, the risks to which the condition of the instrumentalities exposed him." It is thus seen that the court sometimes says *defects*, and sometimes *condition*; but it is perfectly apparent that the same thing is meant whichever word is used. Chief Judge Start comes to my aid, in seeking the true meaning of the Minnesota court, in *Christianson* v. *Northwestern Compo-Board Co.*, (Minn.) 85 N. W. 826, wherein he says: "Now, to charge him with assumption of any risks incident to the condition of the saw which injured him, it is not sufficient that he knew its condition unless he also knew, or in the exercise of ordinary prudence ought to have known and appreciated the risks to which the condition of the saw exposed him in doing the acts he was doing when injured."

*St. Louis etc. R. Co.* v. *Vann,* (Ark.) 135 S. W. 816. One need not go a great ways to find that the Arkansas doctrine is not what the majority claim. The passage quoted from the case named means no more than if it read "it is only where the servant is aware of the *condition* and voluntarily exposes himself to the danger that he can be said to have assumed the risk." This becomes perfectly apparent when reference is made to the case cited just before the statement quoted by the majority,—*C. & G. R. R. Co.* v. *Jones,* 77 Ark. 367, 4 L. R. A. (N. S.) 837. For it is therein said of the servant's relation to a risk caused by the negligence of the master: "On the other hand, if he realizes the danger, and still elects to go ahead and expose himself to it, then, though he acts with the greatest care, he may, if injured, be held to have assumed the risk." And again, "As the danger was brought about by the negligence of the foreman, before it can be said, as a matter at law, that plaintiff assumed the risk thereof by the mere fact that, he went ahead with his work, it must be clearly shown that when he did so, he knew and appreciated the danger to which he exposed himself by doing the work." This puts the burden of proof on to the defendant, but otherwise the rule is the same as our own. To the same effect is *C., R. I. & P. R. Co.,* v. *Grubbs,* (Ark.) 134 S. W. 636.

*Texas Co.* v. *Garrett,* (Tex. Civ. App.) 134 S. W. 812. The true meaning of this case is mistaken by the majority. Here again the word "defects" is used simply to denote the physical conditions. The case shows it. But if further evidence were needed reference might be had to *Farmers Cotton Oil Co.* v. *Barnes,* (Tex. Civ. App.) 134 S. W. 369, wherein it is said: "We are aware that the law is well settled that, notwithstanding the servant owes no duty of inspection, yet he cannot shut his eyes to dangers that are obvious to ordinary man, and assumes the risks of a danger of which he has actual knowledge and of such hazards as he would have learned by the exercise of that ordinary circumspection which a prudent man would have used in the particular employment." Again in *Lone Star etc. Co.* v. *Caddell,* (Tex. Civ. App.) 134 S. W. 841, it is said: "The servant, in order to be charged with an assumption of the risk upon the ground that he knows of the existence of the *defect*

must not only know of the *situation,* but also of the danger that is likely to result from it." Citing *Railway Co.* v. *Jones, supra,* and 1 Labatt, Mas. & Serv. §296,—wherein it is said, "A man of ordinary intelligence and experience may know the actual condition of an instrument with which he is working and yet not know the nature or extent of the risks to which he is exposed."

Reference is made by the majority to the doctrine of waiver. Of course there would be no occasion to refer to this if it was not considered to be applicable to the case, and the result of the treatment of this feature of the case by the majority is to commit the Court to the applicability of that doctrine to these cases. In this connection the majority calls attention to the use of the word "waived" in *Blanchard* v. *Vt. Shade Roller Co.,* 84 Vt. 446. I am ready to admit that the law of waiver is as stated by the majority. But I am not ready to admit that this Court ever intentionally announced the doctrine that it had any place in a negligence case in determining the question of assumption of risk. No such idea was in the mind of the writer of the opinion in the Blanchard case, or any other member of the Court, when it was announced. The term was not used in its legal sense, at all; but only to express the idea that the plaintiff might have so conducted himself as not to be entitled to either protection referred to.

In South Carolina it seems to be held, as stated by the majority, that assumption of risk is in the nature of a waiver. And this term seems to be used in its legal sense. But such is not the law of New York. This appears from the very case cited by the majority, *Drake* v. *Auburn City Ry. Co.,* (N. Y.) 66 N. E. 121. I quote the paragraph from which the statement in the majority opinion is selected: "The rule of the assumption of obvious risks does not rest wholly upon the implied agreement of the employee, but on an independent act of waiver, evidenced by his continuing in the employment with a full knowledge of all the facts." Thus it appears that the waiver here spoken of is not the technical waiver—the voluntary relinquishment of a known right—but one evidenced, that is proved, by continuing in the employment with knowledge of the facts. If any doubt of this could exist it would be dispelled by what

immediately follows what I have quoted. The court proceeds: "In *O'Maley* v. *South Boston Gaslight Co.*, 158 Mass. 135, 32 N. E. 1119, 47 L. R. A. 161, the Supreme Judicial Court of Massachusetts uses this language: "The doctrine of the assumption of the risks of his employment by an employee has usually been considered from the point of view of a contract, express or implied; but, as applied to actions of tort for negligence against an employer, it leads up to the broader principle expressed by the maxim, '*volenti non fit injuria;*' one who knowing and appreciating a danger, and voluntarily assumes the risk of it, has no just cause of complaint against another who is primarily responsible for the existence of the danger. As between the two, his voluntary assumption of the risk absolves the other from any particular duty to him in that respect, and leaves each to take such chances as exist in the situation, without a right to claim anything from the other. In such a case there is no actionable negligence on the part of him who is primarily responsible for the danger."

It must be kept in mind all along that whenever the majority uses the word "defect," it is the equivalent of "a dangerous condition which exists through the negligence of the master." So to get a full understanding of the majority rule, one should substitute this phrase for the word "defect" therein. That I am correct in this proposition sufficiently appears from the following taken from the majority opinion: "There can be no assumption of risks due to a master's negligence in providing defective machinery, unless the servant knows, or must be taken to know, both of the defect and of the danger attending it. The doctrine is thus stated in *Skinner* v. *C. V. R. R. Co.*, 73 Vt. 330, 340, where it is said: "If a servant, *knowing that the master has neglected his duty and that he is thereby subject to dangers not incident to the employment, continues in the service, etc.*" What "doctrine" is here referred to? Why, the doctrine just stated, of course, that the servant must know of the *defect* as well as the danger. And by "defect" is meant just what I have pointed out. So there is no escape from this: The doctrine of the majority contains the elements quoted from the Skinner case which I have italicised.

An ingenious selection and arrangement of expressions taken from various opinions makes it appear that the doctrine of the majority has been previously announced by this Court. I boldly and confidently assert that this claim is incorrect. Restoring these expressions to the opinions from which they were taken, and reading them in connection with the context shows. that this Court never gave conscious utterance to any such doctrine. The cases follow:

*Skinner* v. *C. V. R. R. Co.,* 73 Vt. 336. Judge Start is. correctly quoted. But just before the passage quoted by the majority we find thim saying: "He [the servant] also, in like manner, assumes risks and dangers attending his service that are known to and comprehended by him, in so far as they would have been known and comprehended by one of his age, experience and capacity." What was actually decided in that case is well stated in the head note thereto: "A servant assumes all ordinary risks incident to his employment, and if there are risks, made incident to his employment by his master's negligence, which the servant knows and comprehends, or ought to know and comprehend, he assumes these also, unless he is. lulled into a sense of security by an express or implied representation of the master."

This, I insist, is an accurate statement of the law of that case. This head note was written by the same hand that. penned the majority opinion, and I submit that the reporter analyzes the case more accurately than the judge.

It is said that the language taken by the majority from this case is quoted and approved in the third volume of Cooley on Torts. The importance of this should not be magnified. The voice is not the voice of Judge Cooley, but of his editor.. Judge Cooley, himself, never gave utterance to any such proposition. His rule was this: "The terms in which the proposition has been stated will exempt the master from responsibility in all cases where the risks were apparent, and were voluntarily assumed by a person capable of understanding and appreciating them." Cooley, Torts, 551.

*Severance* v. *New England Talc Co.,* 72 Vt. 181. The majority quote the last sentence of the opinion. But I cannot believe that this case means what the majority claim for it. What

the Court there refers to is knowledge of the *conditions*,—not knowledge of how those conditions came to be. And here again I vouch the head note prepared by the writer of the majority opinion, and insist that it is an accurate statement of the law of the case: "There is no special assumption by a servant of a risk due to the master's negligence, unless the servant knows or ought to know of the unnecessary *risk* so caused." Knowledge of the risk, and not knowledge of its origin or cause, is thus made to determine.

*Johnson* v. *B. & M. Railroad*, 78 Vt. 344. The statement selected by the majority is entirely outside of the decision and if it meant just what the majority claim, would be a *dictum*, only. But I have first-hand information that the opinion was never intended to proclaim any such theory as is ascribed to it. This appears from the following paragraph, in which, in speaking of the negligence relied upon, and the claim that it afforded a basis of recovery, the opinion says: "And so it does, unless, as we have seen, the *condition* and its *dangers* were known to and voluntarily incurred." It is plain enough from the clause "as we have seen" that the expression quoted by the majority and the expression which I quote were intended to mean the same thing. It is equally apparent that at that time, this Court, and every member of it except Judge Munson who did not sit, understood that if Johnson knew the conditions and their dangers he assumed the risk without regard to whether he knew or was ignorant of how those conditions came to be. This is just what counsel claimed, and just what the reporter covered by his headnote.

*Williams* v. *Norton Bros.*, 81 Vt. 1. It is true that Judge Tyler makes use of the word "defects;" but it is perfectly apparent that he means no more than if he had said: "Whether he had an opportunity to see the *condition* of the cable or was chargeable with knowledge of its *condition*, were questions for the jury." Again I call upon the reporter; and I insist that he correctly interprets the Court when he understands it to say, "whether plaintiff was chargeable with knowledge of the *danger*" was a question properly submitted to the jury.

*Vaillancourt* v. *Grand Trunk Ry. Co.*, 82 Vt. 416. This case is not an authority for the majority opinion when properly

understood. In order to show this, I quote the whole paragraph from which the majority take a part; the stars take the place of cases cited: "It is further said that the plaintiff assumed the risk. The risk was not an ordinary one incident to the plaintiff's employment, for the tendency of the evidence is that it existed as a result of the negligence of the master itself. And as an extraordinary risk he did not assume it as a matter of law, since the evidence tends to show that no knowledge of the presence of the clinker was had by him prior to the accident, and whether it was so plainly observable that he will be taken to have known of it and to have comprehended the danger was clearly for the jury to determine. * * * * Nor in this respect does the fact that the plaintiff testified to knowledge that clinkers, big and little, are commonly found around railroad yards and along the track and right of way make any difference in the absence of actual or implied knowledge of the particular defect which caused the accident and a comprehension of the danger attending it." Is it not plain that the word "defect" is here used to mean merely the presence of the clinker as a part of the physical conditions from which danger arose, without regard to how the clinker got there or why it remained there? If the plaintiff knew the clinker was there and comprehended and appreciated just how its presence affected his safety in the discharge of his duties, he would, in the absence of anything to relieve him therefrom,—like being absorbed in his attempt to mount the train or something of that kind—assume the risk, though he was ignorant of how it came there, and did not know that it had been there long enough to charge the company with negligence.

*Marshal v. Dalton Paper Mills*, 82 Vt. 489. I find no support of the majority opinion in this case. I quote all the Court says on the subject of assumption of risk, omitting the statement of the claims of counsel: "There was no evidence, however, that grease had ever before accumulated on the running board to such an amount, nor that the plaintiff had reason to believe it would, nor that he knew it was there on the night of the accident before he was injured. On the other hand, his testimony that he did not know of any trouble with the running board that night was uncontradicted. When before that time there

had been a break in the paper during the time the plaintiff was on duty, or when he had previously been called upon to pass over the running board to or from the wet end of the machine, does not appear. He was working nights only. On that particular night the light in the mill was not good. On the occasion in question in going to the wet end of the machine he ran on the floor between the machine and the side of the room. In returning, guiding the paper over and under the driers and felt rolls, necessarily his whole attention was constantly given thereto. He could not look down to see where nor on what he was stepping, without great danger of being caught by and drawn into the machine. The jury found in effect that but for the defendant's negligence the unsafe condition would not have existed. The risk was therefore not an ordinary one incident to the plaintiff's employment, but an extraordinary and unusual one which he was not in law obliged to anticipate. He had a right to assume that the master had used due diligence to provide him a suitable place in which to work, and he did not assume the risk of the master's negligence in the performance of that duty. Upon the facts and circumstances shown we cannot say as a matter of law that the plaintiff knew of the unsafe condition, nor that it was so plainly observable that he will be taken to have known of it. The question of the assumption of the risk was therefore for the jury." It is to be observed that the negligence in this case was not simply in the presence of grease on the running board, but in allowing it to remain there an unreasonable length of time as was indicated by the quantity which had accumulated. Now supposing the plaintiff had known the grease was there, but was ignorant that it had been there so long as to make the master negligent, and had known just how its presence affected the safety of the place—just how it increased the hazards of his work—is there any doubt that he would have assumed the risk?

The majority says that knowledge of a defect or imperfection, and not merely a dangerous condition, is essential to the assumption of the risk is the doctrine of *Miner* v. *Franklin County Telephone Co.*, 83 Vt. 311. I cannot see it. It is true that the Court in stating the tendency of the evidence several times uses the word "defect," but when the rule of law is stated

it is put in these words: "The plaintiff understood that some of his work would be on poles carrying insulated power wires, and he assumed the risks ordinarily incident to such an employment; but this did not include risks which were due to the defendant's want of proper care, unless they were *risks* which he knew and conprehended, or *risks* so obvious that the law would charge him with knowledge or comprehension." The "defect" in this case was the lack of insulation at a point on these wires between which Miner attempted to pass. He did not see that the insulation was off, though he looked. Suppose he had seen that the insulation was off; he knew all about the dangers which this condition would present; can it be that he would not have assumed the risk? Suppose these wires were utterly bare, and this for the reason that the master had removed the insulation, and Miner, knowing all about the terrible dangers involved, had attempted to pass between them, —could he be heard to say, "I knew the wires were bare; I knew that it meant serious injury if I touched one of them; but I did not know the company had removed the insulation?" I think not. Knowing the conditions and appreciating the perils would have charged him with the consequences of his attempt to pass between the wires.

Turning, now, from what I insist this Court never intentionally said to what we have said on this important subject, I find that the rule I stand for is by no means unfamiliar.

It was said by Judge Miles in *McDuffee's Admr.* v. *B. & M. Railroad*, 81 Vt. 52, with the approval of every member of this Court as now constituted except Judge Munson, who tried the case below, in speaking of a railroad waterspout maintained too near the track: "If it was one of the ordinary risks incident to his employment, it was assumed when he entered the service of the defendant, and if it was an extraordinary one and which he had had an opportunity to ascertain and in fact ascertained and comprehended its dangerous character, and continued in the defendant's service after ascertaining that fact, he also assumed that risk; but we think that the risk was not an ordinary one which he assumed upon entering the defendant's service. It can well be said of this danger as it was said of a similar structure in the case of *Chactaw O. & G. R. R.* v. *McDade*, 191

U. S. 68; 'Its maintenance under the circumstances was negligence upon the part of the railroad company.' Existing as it did through the wrong of the defendant, it was an extraordinary risk and the intestate did not assume it unless he knew and comprehended the danger, or in the circumstances of the case will be taken to have known and comprehended it."

In *Harris* v. *Bottom*, 81 Vt. 346, it was said by Judge Tyler, with the approval of Chief Judge Rowell, and Judges Munson and Watson, in speaking of a mangle which was without a guard: "The law is- settled that the employee assumes the open and obvious danger incident to the operation of unguarded machinery." This case approves the rule that a servant assumes no risk caused by his employer's breach of duty, unless he has knowledge of the *dangers* thereby caused, and voluntarily continues in the employment; but if with this knowledge he does continue therein, the increased danger becomes an incident of the service which he assumes, and for any injury resulting therefrom, the master is not liable.

It was said by Chief Judge Rowell in *Fraser* v. *Blanchard*, 83 Vt. 136, with the approval of every member of this Court, in speaking of the assumption of risk: "But if the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge of all, and both conditions and the dangers are obvious to the common understanding, and the servant is of full age, intelligent, and of adequate experience, and these elements appear without contradiction, the question becomes one for the court."

I respectfully insist that the case in hand fulfills every requirement of this rule.

In *Kilpatrick* v. *Grand Trunk Ry. Co.*, 74 Vt. 288, Judge Stafford, with the approval of Chief Judge Rowell and Judges Munson and Watson, said: "Moreover, one who enters upon a regular employment is presumed to know and appreciate the risks ordinarily incident thereto, and he assumes them. And when, in the course of his employment, a special and obvious risk is presented to him, one not ordinarily incident to the business, he may, as a rule, refuse to accept it, and if he choose to encounter it, he assumes that also."

In *Dumas* v. *Stone*, 65 Vt. 442, Chief Judge Rowell, with the approval of Judge Munson, said: "The servant assumes the usual and ordinary risks incident to the business in which he engages; but he does not assume the unusual and extraordinary risks thereof, unless they are, or ought to have been, known and comprehended by him, in which case he assumes those also,. whatever they are. When a servant shows that his injury was caused by a danger not usually and ordinarily incident to the business, and which ought not to have existed, and would not have existed had the master preformed his duty to him,. and of which he neither knew nor was negligent in not knowing, the master is liable."

In *Houston* v. *Brush & Curtis*, 66 Vt. 331, Judge Thompson quotes this rule of *Dumas* v. *Stone* and says it is correct.

In *Dunbar* v. *C. V. Ry. Co.*, 79 Vt. 474, Chief Judge Rowell, with the approval of Judges Munson, Watson and Haselton, said: "But the risk was not an ordinary risk, existing without the fault of the defendant, and therefore assumed by the plaintiff; but an extraordinary risk, as it existed by the fault of the defendant, and therefore was not assumed by the plaintiff,. unless he knew and comprehended it, or it was so plainly observable that he will be taken to have known and comprehended it."

In *Carbine's Admr.* v. *B. & R. R. R. Co.*, 61 Vt. 348, it was said by Judge Taft: "But a servant assumes no risk caused by his employer's breach of duty, unless he has knowledge of the danger thereby caused and voluntarily continues in the employment. If with this knowledge he does continue, the increased danger becomes an incident of the service which he assumes, and for an injury resulting therefrom the master is. not liable. By the acceptance of the service and continuance therein, the servant assumes the hazard incident to obvious. and known dangers."

In *Hatch* v. *Reynold's Est.*, 80 Vt. 294, Chief Judge Rowell, with the approval of Judges Munson and Watson, said: "Suppose the risk to have been extraordinary, which is most favorable to the plaintiff, the burden was on him to show that he did not assume it; and to do that, it was necessary for him to show that he did not know  and comprehend and that  it was not so

plainly observable that the law will charge him with knowing and comprehending it.''

In *Bolton* v. *Ovitt,* 80 Vt. 362, Chief Judge Rowell, with the approval of Judges Munson and Watson, said: "When the defendant set the plaintiff to holding the cap with his hand he subjected him to an extraordinary risk, and one that the plaintiff did not assume, unless he knew and comprehended it and how to avoid it, or it was so plainly observable that he will be taken to have known and comprehended it, and how to avoid it; and the burden was on the plaintiff to show non-assumption, we will say for present purposes. But whether he was to be taken to have assumed that risk was an open question, depending upon whether he understood the danger from which his injury resulted."

In *McKane* v. *Marr & Gordon,* 79 Vt. 13, Judge Watson, with the approval of the Chief Judge and another member of this Court, quoted and approved the rule governing the law of assumption of risk as stated in *McKane* v. *Marr & Gordon,* 77 Vt. 7, *Laflam* v. *Mississquoi Pulp Co.,* 74 Vt. 125, and *Dumas* v. *Stone, supra,* in each of which knowledge and appreciation of the danger is made the sole determining factor.

In *Shattuck's Admr.* v. *C. V. Ry. Co.,* 79 Vt. 469, Chief Judge Rowell, with the approval of every member of the Court as now constituted, said: "The case as presented is one of an extraordinary risk, because existing by the fault of the defendant, and therefore not assumed by the deceased unless he had knowledge of it, actual or imputed."

It was said by Judge Hall in *Place* v. *Grand Trunk Ry. Co.,* 80 Vt. 196, with the approval of the Chief Judge and judges Munson and Watson, that an employee "does not assume an extraordinary risk, existing by the fault of his employer, unless he knows and comprehends it, or it was so plainly observable that he will be taken to have known and comprehended it."

It is said by Chief Judge Rowell in *Drown* v. *N. E. Tel. & Tel. Co.,* 81 Vt. 358, with the approval of Judges Munson and Watson, in speaking of the assumption of risk: "The case stands on this question as it stood before, when we held that the risk was not ordinary, and therefore assumed by the plaintiff, but extraordinary, and therefore not assumed by him, unless

he knew and comprehended it, or it was so plainly observable that he would be taken to have known and comprehended it."

It is sometimes said that it is better that the law be certain than that it be logical. If this be so, it seems to me that after this proposition for which I contend has thus repeatedly been asserted by this Court it is about time that it should be considered as settled law.

As we have seen, the doctrine announced by the majority is supported only by one or two isolated cases and a few unguarded dicta. Its importance is very far reaching. The result is apparent. At one stroke of the judicial pen the doctrine of assumption of risk as a practical factor in the law of negligence is eliminated forever. For there will never be found a plaintiff so dull as to admit that he knew that the master's conduct amounted to what the law would hold to be negligence. To require him to know this would be to put upon him the burden of deciding off hand questions which often take this Court a year to decide, —for the only question involved in many of these cases is the very question whether the master *has* been negligent. It may be that the doctrine of assumption of risk ought to be eliminated from the law, but I submit that it should be done by legislative and not judicial action.

I should reverse the judgment and render judgment for the defendant to recover his costs.